1

Hon. David G. Estudillo

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**
           **WESTERN DISTRICT OF WASHINGTON**
9                        **AT TACOMA**

10

11   KELLY HUISKAMP, individually and on       Case No. 3:25-cv-05443-DGE
     behalf of all others similar situated,
12

13              Plaintiff,                      **DEFENDANT'S MOTION TO DISMISS**

14          v.

15   ZOOMINFO   TECHNOLOGIES   LLC,   a         NOTE ON MOTION CALENDAR:
     Delaware corporation,                      July 28, 2025
16

17              Defendant.                      ORAL ARGUMENT REQUESTED

18

19

20

21

22

23

24

25

26

27

---

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT.................................................................................................1

BACKGROUND.................................................................................................................2

LEGAL STANDARDS.........................................................................................................4

ARGUMENT .....................................................................................................................5

I.      THE COMPLAINT DOES NOT PLEAD A PTFA VIOLATION........................................5

      A.     Statutory Background Of The PTFA ...............................................................5

      B.     ZoomInfo's Service Is A Searchable Business Database—Not A "Directory" Under The PTFA ..........................................................................................6

II.     THE PTFA DOES NOT ALLOW CLASS-WIDE STATUTORY DAMAGES FOR VIOLATIONS OF THE 2005 AMENDMENT ....................................................................8

III.    THE PTFA BAN ON LISTING CELLULAR PHONE NUMBERS FACIALLY VIOLATES THE FIRST AMENDMENT .........................................................................9

      A.     Section 304(4)(a)(I) Is A Content-Based Restriction On Fully Protected Speech That Triggers Strict Scrutiny ...........................................................10

      B.     Section 304(4)(a)(I) Facially Fails Strict Scrutiny .................................13

CONCLUSION ................................................................................................................17

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE         Page i

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Cases</u>

4

*Am. Acad. of Pain Mgmt. v. Joseph*,
    353 F.3d 1099 (9th Cir. 2004).............................................................................. 11

5

6

*Ams. for Prosperity Found. v. Bonta*,
    594 U.S. 595 (2021) ........................................................................................... 13

7

8

*Angulo v. Providence Health & Servs. - Washington*,
    No. C22-915JLR, 2024 WL 3744258 (W.D. Wash. Aug. 9, 2024), *decision clarified on reconsideration*, No. C22-0915JLR, 2024 WL 4121881 (W.D. Wash. Sept. 9, 2024) ...................................................................................... 9

9

10

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004) ..................................................................................... 16, 17

11

12

*Ashcroft v. Free Speech Coalition*,
    535 U.S. 234 (2002) ........................................................................................... 17

13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 4

14

15

*Atlas Data Privacy Corp. v. We Inform, LLC*,
    758 F. Supp. 3d 322 (D.N.J. 2024) ................................................................... 10

16

17

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ..................................................................................... 13, 17

18

*Berger v. City of Seattle*,
    569 F.3d 1029 (9th Cir. 2009) (en banc)............................................................ 10

19

20

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983) ....................................................................................... 11, 12

21

22

*Brayshaw v. City of Tallahassee*,
    709 F. Supp. 2d 1244 (N.D. Fla. 2010).............................................................. 10

23

*Brown v. Ent. Merchants Ass'n*,
    564 U.S. 786 (2011).................................................................................. 13, 14, 16

24

25

*Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of New York*,
    447 U.S. 557 (1980) ........................................................................................... 11

26

27

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE
Page ii
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
    596 U.S. 61 (2022) .......................................................................................... 10

*City of Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993) ................................................................................... 11, 12

*City of Lakewood v. Plain Dealer Pub. Co.*,
    486 U.S. 750 (1988) .......................................................................................... 12

*Clark v. Whitepages, Inc*,
    No. 2:25-cv-810-TL (W.D. Wash.) ..................................................................... 4

*Colorado Motor Vehicle Dealer Bd. v. Freeman*,
    375 P.3d 111 (Colo. 2016) .................................................................................. 7

*Conrad v. Phone Directories Co.*,
    585 F.3d 1376 (10th Cir. 2009) .......................................................................... 6

*Dex Media West, Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) ..................................................................10, 11, 12

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) .............................................................................. 7

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*,
    485 U.S. 568 (1988) ............................................................................................ 8

*Franklin v. Ocwen Loan Servicing, LLC*,
    No. 18-cv-3333-SI, 2018 WL 5923450 (N.D. Cal. Nov. 13, 2018)...................... 9

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
    No. 12-cv-02432–WYD–KMT, 2015 WL 4036319 (D. Colo. July 1, 2015) ........ 9

*Hall v. Walter*,
    969 P.2d 224 (Colo. 1998) (en banc) ................................................................. 8

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010)............................................................................. 12

*Hunt v. City of Los Angeles*,
    638 F.3d 703 (9th Cir. 2011)....................................................................... 11, 12

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ................................................. 10, 11, 12, 13, 16, 17

*Joseph Burstyn, Inc. v. Wilson*,
    343 U.S. 495 (1952) .......................................................................................... 12

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE
    Page iii
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*Lorillard Tobacco Co. v. Reilly,*
    533 U.S. 525 (2001) ................................................................................................. 11

*Martinez v. Nash Finch Co.,*
    No. 11-cv-02092-MSK-KLM, 2013 WL 1313899 (D. Colo. Mar. 29, 2013) ......................... 9

*Metro One Telecommunications, Inc. v. Comm'r,*
    704 F.3d 1057 (9th Cir. 2012) ...................................................................................... 6

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ................................................................................................. 13

*NetChoice, LLC v. Bonta,*
    113 F.4th 1101 (9th Cir. 2024)................................................................................... 13

*Northstar Fin. Advisors Inc. v. Schwab Invs.,*
    779 F.3d 1036 (9th Cir. 2015)...................................................................................... 4

*Ostergren v. Cuccinelli,*
    615 F.3d 263 (4th Cir. 2010)...................................................................................... 15

*Publius v. Boyer-Vine,*
    237 F. Supp. 3d 997 (E.D. Cal. 2017) ................................................................... 10, 17

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ............................................................................... 10, 11, 13, 14

*Reno v. ACLU,*
    521 U.S. 844 (1997) ................................................................................................. 16

*Schrader v. Dist. Att'y of York Cnty.,*
    74 F.4th 120 (3d Cir. 2023)................................................................................. 15, 17

*Seismic Reservoir 2020, Inc. v. Paulsson,*
    785 F.3d 330 (9th Cir. 2015)....................................................................................... 4

*Sheehan v. Gregoire,*
    272 F. Supp. 2d 1135 (W.D. Wash. 2003) ............................................................. 10, 15

*United States v. Alvarez,*
    567 U.S. 709 (2012) ........................................................................................... 14, 16

*United States v. Playboy Ent. Grp., Inc.,*
    529 U.S. 803 (2000)...................................................................................... 10, 13, 16

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003)....................................................................................... 4

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE       Page iv

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*United States v. Salerno*,
  481 U.S. 739 (1987) ................................................................................................ 13

*United States v. Swisher*,
  811 F.3d 299 (9th Cir. 2016) (en banc) .................................................................. 11

*Univ. Ins., LLC v. Allstate Ins. Co.*,
  564 F. Supp. 3d 934 (W.D. Wash. 2021) .................................................................. 7

*Universal Life Church Monastery Storehouse v. King*,
  No. 2:19-CV-00301-RSL, 2019 WL 2524993 (W.D. Wash. June 19, 2019) .......................... 4

*Victory Processing, LLC v. Fox*,
  937 F.3d 1218 (9th Cir. 2019) ................................................................................ 16

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ................................................................................................ 13

*Williams-Yulee v. Fla. Bar*,
  575 U.S. 433 (2015) ................................................................................................ 14

*X Corp. v. Bonta*,
  116 F.4th 888 (9th Cir. 2024) ................................................................... 11, 12, 13

**Statutes**

1993 Colo. Legis. Serv. H.B. 93-1144 (West) ................................................................. 5

C.R.S. § 6-1-113(2)(b) (2005) ................................................................................... 8

C.R.S. § 6-1-113(2.9) (2022) ..................................................................................... 9

C.R.S. § 6-1-301 ......................................................................................... 6, 14

C.R.S. § 6-1-303 ......................................................................................... 5

C.R.S. § 6-1-304 ......................................................................................... 5

C.R.S. § 6-1-304(4)(a)(I) .......................................................................... 4, 5, 10, 11

C.R.S. § 6-1-305(1)(c) ............................................................................... 8, 17

C.R.S. § 24-72-202(6)(a) ............................................................................ 15

1

## **Other Authorities**

2  *2025 Voter Registration Statistics*, Colorado Secretary of State,
3      https://tinyurl.com/dsdnh3jnd ........................................................................... 15

4  *Attorney / LLP Search & Disciplinary History*, Office of Attorney Regulation
    Counsel,
5      https://tinyurl.com/ojndh347w ........................................................................... 15

6  *Data Reveals Landline Phone Decline Statistics*, Chamber of Commerce (last
    updated July 24, 2024),
7      https://tinyurl.com/dshn7fdhd ........................................................................... 15

8  *Directory*, Cambridge Dictionary,
9      https://tinyurl.com/ghnejwj1 ............................................................................... 7

10 *Directory*, Merriam-Webster Dictionary,
    https://tinyurl.com/gjtehns2 .................................................................................. 6

11 *Election Data Access and Request Form*, Boulder County,
12     https://tinyurl.com/723hdnj4f ............................................................................ 15

13 Gary Harmon, *Cell Phone Bill Will Go Before Legislature*, Grand Junction Daily
    Sentinel (Feb. 23, 2005)
14     https://tinyurl.com/fhfd48dna ........................................................................ 5, 14

15 *Public Voter Data and Information Requests FAQs*, Colorado Secretary of State,
16     https://tinyurl.com/fndfhd4ns ........................................................................... 15

17 *State of Colorado Employee Directory Search*, State of Colorado,
18     https://tinyurl.com/dndsj38549j ........................................................................ 15

19 *TRACER: Search: Candidates*, Colorado Secretary of State,
    https://tinyurl.com/askfjf485u3 ........................................................................ 15

20 *Voter Lists*, Adams County,
21     https://tinyurl.com/dh37jsdnk ........................................................................... 15

22 *Voter Lists*, Douglas County,
23     https://tinyurl.com/00wndf3de ......................................................................... 15

24 *ZoomInfo*,
    https://tinyurl.com/gu42n2n1 .............................................................................. 2

25 *ZoomInfo: Our Data*,
26     https://www.zoominfo.com/data .......................................................................... 3

27

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE      Page vi

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

1

*ZoomInfo: Sales*,
    https://www.zoominfo.com/products/sales ............................................................................. 2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                    Page vii

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

**PRELIMINARY STATEMENT**

Plaintiff Kelly Huiskamp, a Colorado resident, filed this putative class action in Washington state court, targeting ZoomInfo under Colorado's Prevention of Telemarketing Fraud Act ("PTFA"). The claim hinges on a long-dormant 2005 amendment that has never been construed by any court, but bans the "list[ing]" of cell phone numbers in a "directory" for a "commercial purpose." This suit is part of a broader campaign by the plaintiff's counsel, who have filed near-identical cases across the country, carefully avoiding Colorado courts.

ZoomInfo provides a business-to-business database that includes company contact information. The platform has more than just data, though. It offers a suite of outreach tools and automation features to provide various forms of business intelligence. Among its many functions, the ZoomInfo platform can display professionals' names, job titles, work emails, and in some cases, business phone numbers (including cell phone numbers) but not as a distinct category of information or for any telemarketing purpose (and many business phone numbers are, of course, not cell phone numbers). Users can preview limited data for free and purchase subscriptions to view full profiles. But ZoomInfo is not by any account a telemarketing business or platform—the use targeted by the Colorado statute.

This case fails on multiple grounds:

*First*, the PTFA doesn't apply. ZoomInfo doesn't publish a directory of cell phone numbers for a commercial purpose—it offers an interactive business intelligence platform that includes, among varied tools and data, individual profiles that may include a cell phone number. Such use is not what the statute covers.

*Second*, the only relief sought—class-wide statutory damages—is barred by the statute. The Complaint fails to allege any actual harm, and at most supports Mr. Huiskamp's *individual* claim for $300 to $500 in statutory damages. Even if statutory damages survives as a possible remedy for Mr. Huiskamp, which ZoomInfo disputes, the class damages theory should not.

*Third*, the statute is unconstitutional. It singles out certain speech—cell phone numbers—for restriction, while allowing the same information to be published through other channels, including by

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE

Page 1

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

1    the government. That content-based discrimination flunks strict scrutiny and renders the statute

2    facially invalid under the First Amendment.

3                                          **BACKGROUND**

4          ZoomInfo operates an online, searchable database that includes professional contact

5    information, including names, company names and descriptions, company phone numbers, work

6    emails, job titles, and company addresses. *See ZoomInfo*;[1] Compl. ¶¶ 18, 19. Beyond mere data,

7    ZoomInfo offers a suite of business intelligence tools designed to help companies with sales,

8    marketing, and recruiting. *See, e.g.*, *ZoomInfo: Sales*.[2] Its platform includes features such as AI-

9    powered insights, sales intelligence tools, and workflow automation. *See ZoomInfo: Our Data*.[3]

10   ZoomInfo sources information from a variety of places, including public websites and voluntary user

11   contributions. *See id*. The platform hosts millions of records, *see id.*, many of which have never been

12   previewed or viewed by users and remain "unseen" in its database.

13         Plaintiff Kelly Huiskamp is a Colorado resident. Compl. ¶ 10. The only factual allegations in

14   the Complaint specific to plaintiff appear in Paragraph 10, which states: "Plaintiff's cellular telephone

15   number was listed by [ZoomInfo] in its directory, available at zoominfo.com, to advertise and/or

16   actually sell products and services." *Id.*

17         The Complaint does not include screenshots or other direct evidence showing plaintiff's phone

18   number was listed. Instead, it makes general factual allegations concerning "Coloradans" as a group

19   (*e.g.*, *id.* ¶¶ 26, 33) and presents screenshots of profile information related to individuals who are not

20   the plaintiff—namely, a ZoomInfo employee and two unaffiliated professionals at other companies

21   (*id.* ¶ 19), ZoomInfo's CEO (*id.* ¶ 25), and several employees at Nike (*id.* ¶ 22), HEB (*id.* ¶ 24), or

22   other unknown companies (*id.* ¶ 23)—and who do not, at least according to the images, appear to live

23   in Colorado. These examples are offered to support the broader assertion that ZoomInfo operates an

24   "online business-to-business … service [that] compiles and organizes … contact details, business

25

26   _____

     [1]   https://tinyurl.com/gu42n2n1 (last accessed June 26, 2025).

27   [2]   https://www.zoominfo.com/products/sales (last accessed June 26, 2025).

categories, industry, size, location, and other relevant data." *Id.* ¶ 16 (quotation omitted). The Complaint further claims that ZoomInfo and its competitors "monetize said personal details through their directories—some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee." *Id.* ¶ 17. Notably, the Complaint does not allege that ZoomInfo (as opposed to its "competitors") is ad-supported or gives users "free access" to cell phone numbers (in fact, neither is true of ZoomInfo).

Plaintiff alleges that "anyone on the Internet can view Coloradans' cell phone numbers" on "zoominfo.com" (*id.* ¶ 18), and that a "user" of ZoomInfo can search for individuals and companies and access their information—including individual cell phone numbers (*id.* ¶¶ 19, 22). Plaintiff then presents a series of screenshots purporting to demonstrate the search process. *Id.* ¶¶ 19–25. The Complaint does not, however, allege that this search function is available on the portions of ZoomInfo's website accessible without an account (in fact it is not; it is available only to ZoomInfo subscribers logged into their accounts). Plaintiff also does not allege that his own number was ever viewed or accessed by anyone—including his attorneys.

Plaintiff also asserts that ZoomInfo uses cell phone number listings to "entice users to acquire access to [its] various tiers of subscriptions" and references the cost of certain tiers. *Id.* ¶¶ 27, 28. However, the Complaint does not allege that these listings are available to "users" of ZoomInfo's website who are not logged-in subscribers already (in fact they are not). Nor does the Complaint offer any facts linking any specific cell phone number—including plaintiff's—to subscription purchases, or allege any specific, quantifiable monetary injury arising from ZoomInfo's inclusion of cell phone numbers in its database.

---

3    https://www.zoominfo.com/data (last accessed June 26, 2025).

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                Page 3

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

Based on ZoomInfo's alleged inclusion of cell phone numbers, plaintiff asserts a single cause of action under the PTFA, C.R.S. § 6-1-304(4)(a)(I), on behalf of a proposed class of "all Colorado residents whose cell phone numbers were listed on whitepages.com [sic]." Compl. ¶¶ 37, 41.[4]

### LEGAL STANDARDS

To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible" on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

A claim is not plausible unless factual allegations permit the "reasonable inference" that the defendant is liable for the conduct alleged. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Facts that are "merely consistent with" liability fail to state a claim. *Id.* (quotation omitted). Courts disregard "unsupported legal conclusions, which are not entitled to the assumption of truth," and determine "whether the remaining well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Universal Life Church Monastery Storehouse v. King,* No. 2:19-CV-301-RSL, 2019 WL 2524993, at *1 (W.D. Wash. June 19, 2019) (citing *Iqbal*, 556 U.S. at 678). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (quotation omitted).

The Court may consider documents referenced extensively in the complaint, documents whose contents are alleged in the complaint and whose authenticity is undisputed by the parties, and matters of judicial notice. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042–43 (9th Cir. 2015); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

---

[4] ZoomInfo assumes the references to "whitepages.com" (*id.* ¶¶ 37, 41) were an error drawn from plaintiff's counsel's concurrent PTFA case, also in the Western District of Washington, against whitepages.com. *See Clark v. Whitepages, Inc*, No. 2:25-cv-810-TL (W.D. Wash.). To the extent the references were not in error, ZoomInfo asserts, in addition to the defenses and arguments briefed herein, that it has no association or relationship with whitepages.com and therefore is not responsible for the acts or omissions of whitepages.com.

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE
Page 4
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

**ARGUMENT**

**I.      THE COMPLAINT DOES NOT PLEAD A PTFA VIOLATION**

      **A.      Statutory Background Of The PTFA**

Colorado's Prevention of Telemarketing Fraud Act was enacted in 1993 to combat fraudulent telemarketing practices. *See* 1993 Colo. Legis. Serv. H.B. 93-1144 (West). It targets misleading sales calls, mandates telemarketer registration, provides a three-day cancellation window for telemarketing purchases, and requires disclosure of cancellation rights and prompt processing of refunds—among other detailed regulations of the telemarketing business. *See* C.R.S. §§ 6-1-303, 304.

Plaintiff's claim, however, has nothing to do with telemarketing calls—fraudulent or otherwise. Instead, it relies exclusively on a little-known 2005 amendment to the PTFA, which states:

> On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly … [l]ists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent[.]

C.R.S. § 6-1-304(4)(a)(I).

Plaintiff alleges ZoomInfo violated this provision by including some cell phone numbers in its business contact "directory." *See* Compl. ¶¶ 47–49. The Complaint offers no specific allegations of actual telemarketing, consumer harm, or fraud—core concerns of the statute. Instead, it cites speculative research from 2005 and 2006, suggesting consumers might be reluctant to list cell phone numbers in directories, perhaps to avoid spam calls or because they view their cell phones as more private. *Id.* ¶ 3 (citations omitted). This research is not part of the legislative record, nor does it offer evidence relevant to this plaintiff or ZoomInfo's practices.

The Complaint also relies on a 2005 news article quoting then-State Rep. Mark Cloer, who expressed personal concerns that unsolicited calls to cell phones impose a financial cost on recipients. *See id.* ¶ 2 (citing Gary Harmon, *Cell Phone Bill Will Go Before Legislature*, Grand Junction Daily Sentinel (Feb. 23, 2005)).[5] But those comments are not part of the legislative record either, and are not

---

[5]    https://tinyurl.com/fhfd48dna.

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                    Page 5

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

tied to any official findings or the cited studies. Nor does the Complaint allege plaintiff incurred any such cost or received any calls at all.

Even so, plaintiff attempts to anchor this amendment to the PTFA's original 1993 statement of purpose (*id.* ¶ 4)—which never mentions cellular phones, directories, or call costs. That statement of purpose focused on widespread fraud targeting vulnerable consumers through landline telemarketing. *See* C.R.S § 6-1-301. It references deceptive calls, financial loss, and abuse of elderly and homebound consumers. *Id.* The Complaint alleges none of those harms.

In short, the 1993 PTFA was not intended to cover services like ZoomInfo's, and the 2005 amendment offers no support for plaintiff's claim here. As further explained below, the Complaint fails to plead any conduct falling within the scope of the statute as enacted or amended.

**B.    ZoomInfo's Service Is A Searchable Business Database—Not A "Directory" Under The PTFA**

Against the backdrop of the PTFA's narrow and specific statutory focus, ZoomInfo's service does not qualify as a "directory" of "cellular telephone numbers" within the meaning of the statute. ZoomInfo provides a business-focused platform featuring professional profiles of individuals and businesses that sometimes (if they choose) include a cell phone number—but never as a distinct offering or monetized category.

The 2005 amendment has never been construed by any court and does not define "directory." In such instances, courts turn to ordinary dictionary definitions to determine plain meaning. *See, e.g.*, *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We may consult a dictionary to determine the plain meaning of a term."); *Metro One Telecommunications, Inc. v. Comm'r*, 704 F.3d 1057, 1061 (9th Cir. 2012) (same). Here, dictionary definitions of "directory" include "an alphabetical or classified list (as of names and addresses),"[6] or "a list of telephone

---

[6] *Directory*, Merriam-Webster Dictionary, https://tinyurl.com/gjtehns2 (last accessed June 25, 2025).

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                    Page 6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

numbers, names, addresses, or other information."[7] The common thread is organization by name or category in list form.

ZoomInfo's platform is not a "directory" of cell phone numbers by any such definition. It is a dynamic, searchable database of professional and business information. It does not present cell phone numbers as a standalone category, nor does it separately list, sort, or monetize them. (Business contact numbers are, of course, often landlines). Where a cell phone number is included, it appears only as part of a comprehensive professional profile, not as the discrete product being sold.

ZoomInfo sells access to the full database via subscription—not access to any subset of numbers, and certainly not to a "directory" of cell phones. That distinction matters. The statute does not apply to every internet publication that incidentally contains cell phone numbers—such an interpretation would sweep in potentially any social media or business networking site where users have the option to list contact information (Meta, LinkedIn, countless others). That would be an absurd and unintended result. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 670 (9th Cir. 2021) (courts "avoid absurd results when interpreting statutes"); *Colorado Motor Vehicle Dealer Bd. v. Freeman*, 375 P.3d 111, 114 (Colo. 2016) ("when construing a statute we read and consider it as a whole … and we seek to avoid absurd results") (citation omitted); *see also Univ. Ins., LLC v. Allstate Ins. Co*., 564 F. Supp. 3d 934, 941 (W.D. Wash. 2021) (courts "avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences") (quotation omitted). But the statute does not sweep that broadly; rather, it targets lists of cell phone numbers distributed for commercial use. The statute's plain meaning, reasonably read, does not reach general business databases where a cell phone number might appear among other varied information of value to users.

Interpreting the PTFA to cover ZoomInfo's service would also raise serious constitutional concerns. As discussed further herein, *infra* Section III, the First Amendment protects the dissemination of truthful, publicly available information—including business contact details—and, as construed by the plaintiff, Section 304(4)(a)(I) does not withstand constitutional scrutiny. Courts

---

[7] *Directory*, Cambridge Dictionary, https://tinyurl.com/ghnejwj1 (last accessed June 25, 2025).

MOTION TO DISMISS
Case 3:25-cv-05443-DGE                    Page 7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

1   routinely construe statutes to avoid constitutional problems where a plausible alternative reading

2   exists. *See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*,

3   485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise

4   serious constitutional problems, the Court will construe the statute to avoid such problems unless such

5   construction is plainly contrary to the intent of Congress."). Construing the statute to exclude

6   ZoomInfo's service would avoid the constitutional questions in this case (and there is no contrary

7   legislative intent).

8   ## II.   THE PTFA DOES NOT ALLOW CLASS-WIDE STATUTORY DAMAGES FOR
9   ## VIOLATIONS OF THE 2005 AMENDMENT

10          Even if plaintiff had stated a viable claim under the PTFA, which ZoomInfo disputes, the sole

11   monetary relief sought—class-wide statutory damages, *see* Compl. ¶ 56—is not authorized by the

12   statute. Regardless of whether the cause of action survives, the Court should dismiss the demand for

13   class-wide statutory damages.

14          The Colorado legislature provided for limited statutory damages only for individual claims

15   brought under the PTFA. The PTFA is part of the Colorado Consumer Protection Act ("CCPA").

16   When the relevant provision of the PTFA was enacted in 2005, it provided that a plaintiff may recover

17   limited statutory damages of $300 to $500 for a first offense. *See* C.R.S. § 6-1-305(1)(c). Critically,

18   this section provides only for individual statutory damages—and says nothing about class relief.

19          At the time § 6-1-305(c) was enacted, the CCPA authorized damages recovery *only* in

20   individual actions. C.R.S. § 6-1-113(2)(b) (2005) ("*Except in a class action* [or certain deceptive trade

21   practices suits] and notwithstanding any other law," any person in "a private civil action" may recover

22   the greater of "actual damages," "[f]ive hundred dollars," or, in cases of "bad faith," three times actual

23   damages.) (emphasis added).[8] In 2022, Colorado amended the CCPA to allow actual damages in class

24

25   [8] The CCPA was largely modeled on the Revised Uniform Deceptive Trade Practices Act. That model
26   law does not authorize private plaintiffs to recover monetary damages—only injunctive relief. *Hall v.
    Walter*, 969 P.2d 224, 232 (Colo. 1998) (en banc). Prior to the 2022 amendment, multiple courts
27   interpreting this provision held that, under the CCPA, class-wide monetary damages were barred
    (footnote continued)

1   actions—but notably did not authorize statutory damages for class relief: "In a case certified as a class
2   action, a successful plaintiff may recover actual damages, injunctive relief allowed by law, and
3   reasonable attorney fees and costs." C.R.S. § 6-1-113(2.9) (2022). Despite the presence of multiple
4   statutory damages remedies provisions in the PTFA, the 2022 CCPA amendment specifically *omitted*
5   these remedies from class action recovery. Read together, these provisions reflect a clear legislative
6   judgment: class actions may seek actual damages, but not statutory penalties under the PTFA.

7       At most, plaintiff may pursue an individual statutory damages claim for between $300 and
8   $500. But the statute does not support class-wide recovery of those damages. Courts in analogous
9   contexts have dismissed similar overreaches. *See, e.g.*, *Franklin v. Ocwen Loan Servicing, LLC*, No.
10  18-cv-3333-SI, 2018 WL 5923450, at *5-7 (N.D. Cal. Nov. 13, 2018) (dismissing statutory damage
11  claim on a per-violation basis, when applicable statute allowed statutory damage awards on per-action
12  basis only); *cf. Angulo v. Providence Health & Servs. - Washington*, No. C22-915JLR, 2024 WL
13  3744258, at *6 (W.D. Wash. Aug. 9, 2024), *decision clarified on reconsideration*, 2024 WL 4121881
14  (W.D. Wash. Sept. 9, 2024) (striking class allegations).

15      Accordingly, the Court should dismiss the request for class-wide statutory damages under the
16  PTFA.

17  **III.    THE PTFA BAN ON LISTING CELLULAR PHONE NUMBERS FACIALLY**
18  **VIOLATES THE FIRST AMENDMENT**

19      Section 304(4)(a)(I) of the PTFA is a content-based restriction on fully protected speech,
20  subject to strict scrutiny under the First Amendment. *See Reed v. Town of Gilbert*, 576 U.S. 155, 171
21  (2015). If the Court rules that the PTFA sweeps in ZoomInfo's service, the Court should still dismiss
22  the case because the statute, so construed, is neither narrowly tailored nor the least restrictive means of

23

24  altogether. *See, e.g.*, *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-2432-WYD-KMT, 2015
25  WL 4036319, at *5-7 (D. Colo. July 1, 2015); *Martinez v. Nash Finch Co.*, No. 11-cv-2092-MSK-
    KLM, 2013 WL 1313899, at *3 (D. Colo. Mar. 29, 2013) ("The only reasonable reading of the
26  statutory language is that the enumerated items of monetary relief are *not* available in class actions.")
27  (emphasis in original).

1  achieving Colorado's interests and therefore fails a facial challenge under strict scrutiny. *See United*
2  *States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).[9]

3       A.    **Section 304(4)(a)(I) Is A Content-Based Restriction On Fully Protected Speech**
4             **That Triggers Strict Scrutiny**

5             A restriction is content-based if it "targets speech based on its communicative content … [*i.e.,*]
6  it applies to particular speech because of the topic discussed or the idea or message expressed." *City of*
7  *Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quotation omitted). Section
8  304(4)(a)(I) clearly does so, as it "defin[es] regulated speech by particular subject matter," *Reed*, 576
9  U.S. at 163—specifically, whether a covered person has listed a "cellular telephone number" rather
10 than other information. *See* C.R.S. § 6-1-304(4)(a)(I). Because it "prohibits the dissemination of one
11 type of speech," *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020), Section 304(4)(a)(I)
12 is an "obvious" content-based restriction. *Reed*, 576 U.S. at 163; *see Berger v. City of Seattle*, 569
13 F.3d 1029, 1051 (9th Cir. 2009) (en banc) (a content-based restriction "singles out particular content
14 for differential treatment").

15            Courts consistently recognize that restrictions on disclosing phone numbers or similar personal
16 data are content-based. *See, e.g., Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir.
17 2012) (yellow pages containing addresses and phone numbers); *Sheehan v. Gregoire*, 272 F. Supp. 2d
18 1135, 1146 (W.D. Wash. 2003) (same re: addresses and phone numbers); *Atlas Data Privacy Corp. v.*
19 *We Inform, LLC*, 758 F. Supp. 3d 322, 335 (D.N.J. 2024) (same); *Publius v. Boyer-Vine*, 237 F. Supp.
20 3d 997, 1012-13 (E.D. Cal. 2017) (same); *Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244,
21 1250 (N.D. Fla. 2010) (same); *see also IMDb.com*, 962 F.3d at 1120 (date of birth and age
22 information). Section 304(4)(a)(I) explicitly regulates the disclosure of phone numbers, and plaintiff's
23 theory of liability rests entirely on that regulation. Nothing in the statutory text supports any
24 alternative characterization.

25
26 _____
27 [9]  ZoomInfo reserves the right to later bring an as-applied challenge under the First Amendment.

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                    Page 10

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

As a rule, content-based restrictions are subject to strict scrutiny. *See IMDb.com*, 962 F.3d at 1121; *cf. Reed*, 576 U.S. at 165 (strict scrutiny applies "regardless of the government's benign motive"). Narrow categories of speech, including commercial speech, receive lesser protection. *See IMDb.com*, 962 F.3d at 1121–25; *United States v. Swisher*, 811 F.3d 299, 313 (9th Cir. 2016) (en banc). Commercial speech is evaluated under intermediate scrutiny. *See Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).

But Section 304(4)(a)(I) does not regulate commercial speech, and any argument otherwise is foreclosed by binding precedent. The essence of commercial speech is that it "does 'no more than propose a commercial transaction.'" *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 422 (1993) (quoting *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 66 (1983)). Advertising restrictions thus typically fall within intermediate scrutiny. *See, e.g., Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001); *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004). Although the Ninth Circuit has identified a few additional forms of commercial speech, these are limited. *See X Corp. v. Bonta*, 116 F.4th 888, 901 (9th Cir. 2024) ("To the extent our circuit has recognized exceptions to [the] general rule, those exceptions are limited."). The Ninth Circuit applies three factors from *Bolger* to assess such cases: (1) whether the speech is an advertisement; (2) whether it refers to a particular product; and (3) whether the speaker has an economic motivation. *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger*, 463 U.S. at 66–67); *see Dex Media West*, 696 F.3d at 958.

The speech regulated by Section 304(4)(a)(I)—listing cell phone numbers in a directory—is not directed to advertisements or a proposed economic transaction, and falls well outside any recognized exception. To start, the law does not regulate proposals to transact in cell phone numbers—it prohibits the listing itself. *See* C.R.S. § 6-1-304(4)(a)(I) (a person commits an unlawful telemarketing practice by "knowingly: (I) List[ing] a cellular telephone number in a directory for a commercial purpose"). This provision is not a restriction on *advertising* that such listings exist; it is a direct prohibition on *the listing*. *Cf. IMDb.com*, 962 F.3d at 1122 (resume-like profiles containing

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

biographical information are not commercial speech). Plaintiff's failure to reference or include any advertisements by ZoomInfo including cell phone number listings confirms the point.

Applying the *Bolger* factors likewise confirms the statute does not target commercial speech. First, a listing is not an "advertisement." *Hunt*, 638 F.3d at 715. It is simply information—potentially sold, shared, or published, but not necessarily in connection with any proposed exchange. Second, the regulated content does not "refer[] to a particular product." *Id*. It is the product. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) ("Hallmark's card is not advertising the product; it *is* the product") (emphasis in original). A stand-alone 10-digit number is not an ad for any other product.

That leaves only the "economic motivation" prong. *See Hunt*, 638 F.3d at 715. Section 304(4)(a)(I)'s reference to "commercial purpose" attempts to capture this factor. But economic motivation alone is "clearly … insufficient" to transform fully protected speech into commercial speech. *See Bolger*, 463 U.S. at 67; *see also Dex Media West*, 696 F.3d at 960. As the Supreme Court has made clear, "the degree of First Amendment protection is not diminished merely because the [protected expression] is sold rather than given away." *City of Lakewood v. Plain Dealer Pub. Co*., 486 U.S. 750, 756 n.5 (1988); *see Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment."). Because only one of the *Bolger* factors arguably applies, the regulated speech is not commercial. *See IMDb.com*, 962 F.3d at 1122; *Dex Media West*, 696 F.3d at 960.[10]

Although Section 304(4)(a)(I) would also fail intermediate scrutiny for lack of tailoring, *see Discovery Network*, 507 U.S. at 424–28; *infra* pp. 14–16, that is not the applicable standard. Section

---

[10]  The Ninth Circuit recently confirmed this application of the *Bolger* factors by enumerating some non-core instances of commercial speech. None are analogous to the speech regulated by Section 304(4)(a)(I). *See X Corp.*, 116 F.4th at 901 (listing " targeted, individualized solicitations; contract negotiations; and retail product warnings") (citations omitted); *see also id.* (characterizing the above as speech that "does not directly or exclusively propose a commercial transaction," but still "communicates the terms of an actual or potential transaction").

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                Page 12

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

304(4)(a)(I) is a content-based restriction that does not regulate commercial speech, and no other basis exists for diminishing the level of protection. Strict scrutiny applies. *See IMDb.com*, 962 F.3d at 1125.

### B.    <u>Section 304(4)(a)(I) Facially Fails Strict Scrutiny</u>

Strict scrutiny "is a demanding standard." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011). Content-based restrictions are "presumptively unconstitutional," *Reed*, 576 U.S. at 163, particularly when they regulate truthful speech. *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[S]tate action to punish the publication of truthful information seldom can satisfy constitutional standards.") (quotation omitted); *Playboy Ent. Grp.*, 529 U.S. at 818 ("It is rare that a regulation restricting speech because of its content will ever be permissible."). To survive, a law must serve a compelling state interest and be narrowly tailored to that interest. *Reed*, 576 U.S. at 171. Moreover, "[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy Ent. Grp.*, 529 U.S. at 813.

In ordinary constitutional cases, facial challenges require a party to show that "no set of circumstances exists under which the [law] would be valid," *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), or that the law "lacks 'a plainly legitimate sweep.'" *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). But under the First Amendment, a more speech-protective standard applies: A party must show only that "a substantial number of [the law's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." *Id.* (quotation omitted); *see Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).

Even assuming Section 304(4)(a)(I) advances a compelling interest—which ZoomInfo disputes—the statute is neither narrowly tailored nor the least restrictive means to achieve that interest. Because these defects appear in "every application" of the law, they render the statute facially invalid. *See NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1116 (9th Cir. 2024); *X Corp.*, 116 F.4th at 899.

<u>No Compelling State Interest</u>. To satisfy strict scrutiny, a law must "further[] a compelling government interest." *Reed*, 576 U.S. at 171. The PTFA's preamble cites two interests: curbing

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                Page 13

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

"fraudulent and deceptive commercial telephone solicitation" and protecting "the integrity of the telemarketing industry." C.R.S. § 6-1-301.[11]

The latter interest—the integrity of the telemarketing industry—is not recognized in case law as compelling and should not weigh in the First Amendment analysis. As to curbing fraudulent and deceptive telemarketing, that interest may or may not be compelling. But "to recite the Government's compelling interests is not to end the matter." *United States v. Alvarez*, 567 U.S. 709, 725 (2012). The government must still carry its "heavy burden" when regulating protected speech. *Id*. at 726. Even assuming the asserted interest is compelling—which ZoomInfo does not concede—the statute still fails because it is poorly tailored and imposes more restrictions than necessary.

**No Narrow Tailoring**. A law is not narrowly tailored if it is "seriously underinclusive" or "overinclusive." *See Ent. Merchants Ass'n*, 564 U.S. at 805. Underinclusiveness can signal that the law "does not actually advance a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015). Where a law regulates one category of speech but allows "unlimited numbers of other types" that cause the same harm, *Reed*, 576 U.S. at 172, it is "wildly" underinclusive—and this alone may render it unconstitutional. *See Ent. Merchants Ass'n*, 564 U.S. at 802.

Section 304(4)(a)(I) is fatally underinclusive. It targets certain channels of speech while leaving untouched countless other means of distributing the same information. The statute restricts the listing of cell phone numbers in a "directory" for a commercial purpose without affirmative consent, ostensibly to prevent fraudulent telemarketing. But it categorically excludes landline telephone numbers—which if anything are *more* likely to be used to target elderly Coloradans, who are more likely to have only landlines—and it leaves many other distribution channels entirely unregulated.[12]

---

[11]   In a 2005 news story plaintiff quotes, *see* Compl. ¶ 2, Rep. Cloer also expressed concern about individuals being charged for unsolicited calls. *See* Harmon, *supra*. But most modern cell phone plans offer unlimited calling and texting. If that interest ever were compelling, it is not now.

[12]   The sources listed in this section do not distinguish between cell phone numbers and landline numbers.  But since most Colorado residents do not have landlines (71.6% as of 2020) and almost no Americans have a landline but no cell phone (1.3% as of 2022), it is very likely that most of the relevant phone numbers are cell phone numbers. *See Data Reveals Landline Phone Decline Statistics*, (footnote continued)

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                     Page 14

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

For example, Colorado law makes voter phone numbers (including cell phone numbers) publicly accessible upon request unless marked confidential. *See Public Voter Data and Information Requests FAQs*, Colorado Secretary of State;[13] C.R.S. § 24-72-202(6)(a). County voter lists show that many voters voluntarily provide these numbers. *See, e.g.*, *Election Data Access and Request Form*, Boulder County;[14] *Voter Lists*, Adams County;[15] *Voter Lists*, Douglas County.[16] Thus, hundreds of thousands—perhaps millions—of phone numbers are lawfully available through public records, even as Section 304(4)(a)(I) bars the same listings by ZoomInfo (under plaintiff's interpretation of the statute). *See 2025 Voter Registration Statistics*, Colorado Secretary of State.[17]

The state also publishes phone numbers in other contexts: campaign finance reports, employee directories, and attorney directories. Required disclosure reports contain phone numbers for political candidates. *See TRACER: Search: Candidates*, Colorado Secretary of State.[18] The state maintains a searchable employee directory, which includes the phone numbers of state employees. *See State of Colorado Employee Directory Search*, State of Colorado.[19] And the state supreme court manages a directory of Colorado-barred attorneys, which includes phone number information. *See Attorney / LLP Search & Disciplinary History*, Office of Attorney Regulation Counsel.[20] These public disclosures expose the statute's inconsistency—it forbids private distribution while the government itself shares the same data.

Courts routinely strike down such underinclusive laws or enjoin their enforcement. *See, e.g.*, *Ostergren v. Cuccinelli*, 615 F.3d 263, 286 (4th Cir. 2010); *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 127 (3d Cir. 2023); *cf. Sheehan*, 272 F. Supp. 2d at 1147. Because the state has voluntarily

---

Chamber of Commerce (last updated July 24, 2024), https://tinyurl.com/dshn7fdhd; *see also id.* (noting that "older adults are more likely to be available via landline").

[13]   https://tinyurl.com/fndfhd4ns (last accessed June 25, 2025).
[14]   https://tinyurl.com/723hdnj4f (last accessed June 25, 2025).
[15]   https://tinyurl.com/dh37jsdnk (last accessed June 25, 2025).
[16]   https://tinyurl.com/00wndf3de (last accessed June 25, 2025).
[17]   https://tinyurl.com/dsdnh3jnd (last accessed June 25, 2025).
[18]   https://tinyurl.com/askfjf485u3 (last accessed June 25, 2025).
[19]   https://tinyurl.com/dndsj38549j (last accessed June 25, 2025).

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                    Page 15

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

disclosed much of the regulated information, it cannot credibly claim a compelling interest in prohibiting private dissemination of the same. That fact alone defeats the law under *Reed* and *Entertainment Merchants Association*.

Moreover, the statute excludes many non-governmental sources. Its "commercial purpose" limitation exempts churches, schools, political organizations, and others who might share the same phone numbers for different ends. Finally, the law is irrational in that it prohibits others from listing a cell phone number even if the subject individual has herself published it online (which is the primary source from which ZoomInfo obtains such information).

All these reasons render Section 304(4)(a)(I) "woefully underinclusive." *IMDb.com*, 962 F.3d at 1127. Colorado has singled out certain speakers—those with a commercial motive who publish undefined "directories"—without offering any persuasive justification. That discriminatory targeting is constitutionally fatal. *See Ent. Merchants Ass'n*, 564 U.S. at 802.

**<u>Not the Least Restrictive Means</u>**. When a law suppresses large amounts of speech, strict scrutiny demands that it be "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU* ("*Ashcroft II*"), 542 U.S. 656, 666 (2004); *see Reno v. ACLU*, 521 U.S. 844, 874 (1997); *Playboy Ent. Grp.*, 529 U.S. at 813. Because plaintiff defends the law's constitutionality, he bears the burden of proving that "proposed less restrictive alternatives are less effective." *Ashcroft II*, 542 U.S. at 666. That burden cannot be met with mere assertions. *See Alvarez*, 567 U.S. at 729; *see also Playboy Ent. Grp.*, 529 U.S. at 817–24; *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019).

There are several obvious, less restrictive alternatives:

1. **Exempt already-public information**. Listings of cell phone numbers previously disclosed by the government or the subjects themselves could be excluded from coverage. *See supra* pp. 15–16.

---

[20]   https://tinyurl.com/ojndh347w (last accessed June 25, 2025).

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                Page 16

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

2.      **Target wrongful conduct, not protected speech**. As the Supreme Court has said, "[t]he normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it." *Bartnicki*, 532 U.S. at 529; *see IMDb.com*, 962 F.3d at 1123. If Colorado seeks to prevent fraud or harassment, it can prohibit those acts without restricting protected publication of cell phone numbers.

3.      **Limit remedies**. The extent of penalties affects the burden on speech. *See Ashcroft II*, 542 U.S. at 660; *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). Here, violations of Section 304(4)(a)(I) give rise to consequential damages, attorney's fees and costs, and a statutory penalty (even without proof of harm). *See* C.R.S. § 6-1-305(1)(c). These penalties could chill lawful speech—especially in class actions purporting to aggregate thousands of claims. *See supra* pp. 8–9. Less burdensome remedies (*e.g.*, actual damages only, injunctive relief only, or scienter-based liability tied to actual or at least potential harm) would achieve the same goals with fewer speech restrictions. *See Schrader*, 74 F.4th at 127; *Publius*, 237 F. Supp. 3d at 1021.

Because Section 304(4)(a)(I) is neither narrowly tailored nor the least restrictive means of achieving any compelling interest, it fails strict scrutiny. The Court should dismiss the complaint.

## <u>CONCLUSION</u>

For these reasons, ZoomInfo's motion to dismiss should be granted.

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                    Page 17

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

1    DATED:  June 30, 2025                QUINN EMANUEL URQUHART &
2                                         SULLIVAN, LLP

3                                         By  */s/ Alicia Cobb*
4                                             Alicia Cobb, WSBA #48685
                                              aliciacobb@quinnemanuel.com
5                                             1109 First Avenue, Suite 210
                                              Seattle, Washington 98101
6                                             (206) 905-7000

7                                             Shon Morgan (*pro hac vice*)
8                                             shonmorgan@quinnemanuel.com
                                              John W. Baumann (*pro hac vice*)
9                                             jackbauman@quinnemanuel.com
                                              Thomas Nolan (*pro hac vice*)
10                                            thomasnolan@quinnemanuel.com
                                              865 F. Figueroa Street, 10th Floor
11                                            Los Angeles, CA 90017
                                              (213) 4443-3000
12

13                                            *Attorneys for Defendant*
                                              *ZoomInfo Technologies LLC*
14

15                                            *I certify that this motion contains 5801 words, in*
                                              *compliance with the Local Civil Rules.*
16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                    Page 18

1

## <u>CERTIFICATE OF SERVICE</u>

2      The undersigned hereby certifies that on June 30, 2025, I caused a true and correct copy of the

3  above and foregoing document to be filed on the Court's ECF system, and thereby served on all

4  counsel of record who have appeared in the action.

5

6      DATED this 30th day of June, 2025, at Seattle, Washington.

7                                        s/ *Alicia Cobb*
                                         Alicia Cobb, WSBA No. 48685
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE                 Page 19

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100