Hon. Tana Lin

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| KELLY HUISKAMP, individually and on behalf of all others similar situated,<br><br>Plaintiff,<br><br>v.<br><br>ZOOMINFO TECHNOLOGIES LLC, a Delaware corporation,<br><br>Defendant. | Case No. 3:25-cv-05443-TL<br><br>**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: November 18, 2025<br><br>ORAL ARGUMENT REQUESTED |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

LEGAL STANDARDS ........ 4

ARGUMENT ........ 5

I. THE COMPLAINT DOES NOT PLEAD A PTFA VIOLATION ........ 5

A. Statutory Background Of The PTFA ........ 5

B. ZoomInfo's Service Is A Searchable Business Database—Not A "Directory" Under The PTFA ........ 6

II. THE PTFA BAN ON LISTING CELLULAR PHONE NUMBERS FACIALLY VIOLATES THE FIRST AMENDMENT ........ 8

A. Section 304(4)(a)(I) Is A Content-Based Restriction On Fully Protected Speech That Triggers Strict Scrutiny ........ 9

B. The Statute Is Subject to Strict Scrutiny ........ 10

C. Section 304(4)(a)(I) Facially Fails Strict Scrutiny ........ 12

III. THE PTFA DOES NOT ALLOW CLASS-WIDE STATUTORY DAMAGES FOR VIOLATIONS OF THE 2005 AMENDMENT ........ 17

IV. THE COURT CAN CERTIFY TO THE COLORADO SUPREME COURT ANY QUESTIONS REGARDING APPLICATION OF THE PTFA ........ 19

CONCLUSION ........ 19

CERTIFICATION OF CONFERENCE OF COUNSEL ........ 21

MOTION TO DISMISS
Case No. 3:25-cv-05443-TL

Page i

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

## Cases

*Am. Acad. of Pain Mgmt. v. Joseph*,
353 F.3d 1099 (9th Cir. 2004) .......... 10

*Angulo v. Providence Health & Servs. - Washington*,
No. C22-915JLR, 2024 WL 3744258 (W.D. Wash. Aug. 9, 2024), *decision clarified on reconsideration*, 2024 WL 4121881 (W.D. Wash. Sept. 9, 2024) .......... 18

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) .......... 16

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002) .......... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 5

*Atlas Data Privacy Corp. v. We Inform, LLC*,
758 F. Supp. 3d 322 (D.N.J. 2024) .......... 10

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) .......... 12, 16

*Berger v. City of Seattle*,
569 F.3d 1029 (9th Cir. 2009) (en banc) .......... 9

*Bolger v. Youngs Drug Prods. Corp*.,
463 U.S. 60 (1983) .......... 10, 11

*Brayshaw v. City of Tallahassee*,
709 F. Supp. 2d 1244 (N.D. Fla. 2010) .......... 10

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011) .......... 12, 13, 14, 15

*Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of New York*,
447 U.S. 557 (1980) .......... 10

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
596 U.S. 61 (2022) .......... 9

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) .......... 10, 12

*City of Lakewood v. Plain Dealer Pub. Co*.,
486 U.S. 750 (1988) .......... 11

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*Clark v. Whitepages, Inc.*,
2:25-cv-00810-TL (W.D. Wash.) .... 19

*Colorado Motor Vehicle Dealer Bd. v. Freeman*,
375 P.3d 111 (Colo. 2016) .... 7

*Conrad v. Phone Directories Co.*,
585 F.3d 1376 (10th Cir. 2009) .... 7

*Curran v. Home Partner Holdings LLC*,
2024 WL 1829266 (D. Colo. Mar. 20, 2024) .... 19

*Dex Media West, Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) .... 10, 11, 12

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) .... 7

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*,
485 U.S. 568 (1988) .... 8

*Elliot v. Mississippi Tornado Alley*,
LLC, 1:25-cv-02384-CYC (D. Colo.) .... 19

*Franklin v. Ocwen Loan Servicing, LLC*,
No. 18-cv-3333-SI, 2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) .... 18

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
No. 12-cv-2432-WYD-KMT, 2015 WL 4036319 (D. Colo. July 1, 2015) .... 17

*Hall v. Walter*,
969 P.2d 224 (Colo. 1998) (en banc) .... 17

*Hamilton v. Amazon.com Servs. LLC*,
2024 WL 158760, at *1 (10th Cir. Jan. 12, 2024), *certified question answered*, 2024 CO 60, 555 P.3d 620 .... 19

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) .... 11

*Holland Adinoff v. West Publ'g Corp.*,
1:25-cv-02448-STV (D. Colo.) .... 19

*Hunt v. City of Los Angeles*,
638 F.3d 703 (9th Cir. 2011) .... 11

*Hutchings, et al. v. Lusha Systems, Inc.*,
No. 1:25-cv-01908-NRN (D. Colo.) .... 19

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) .......... *passim*

*Jackson v. WhitePages, Inc.*,
No. 1:24-CV-102, 2025 WL 2407201 (N.D.W.Va. Aug. 19, 2025) .......... 9, 11, 12

*Joseph Burstyn, Inc. v. Wilson*,
343 U.S. 495 (1952) .......... 11

*Larancuent v. Spokeo*,
No. 2:25-cv-04935-FMO-JC (C.D. Cal.) .......... 19

*Lehman Bros. v. Schein*,
416 U.S. 386 (1974) .......... 19

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001) .......... 10

*Martinez v. Nash Finch Co.*,
No. 11-cv-2092-MSK-KLM, 2013 WL 1313899 (D. Colo. Mar. 29, 2013) .......... 18

*McClure v. RocketReach, LLC*,
No. 2:25-cv-00986-TL .......... 19

*Metro One Telecommunications, Inc. v. Comm'r*,
704 F.3d 1057 (9th Cir. 2012) .......... 7

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .......... 13

*NetChoice, LLC v. Bonta*,
113 F.4th 1101 (9th Cir. 2024) .......... 13

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
779 F.3d 1036 (9th Cir. 2015) .......... 5

*Ostergren v. Cuccinelli*,
615 F.3d 263 (4th Cir. 2010) .......... 15

*Pearson v. Geico Cas. Co.*,
2018 WL 2096348, at *10 (D. Colo. May 7, 2018), *report and recommendation adopted in relevant part*, 2018 WL 4368667 (D. Colo. June 3, 2018) .......... 18

*Publius v. Boyer-Vine*,
237 F. Supp. 3d 997 (E.D. Cal. 2017) .......... 10, 17

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... *passim*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*Reno v. ACLU*,
521 U.S. 844 (1997) .......... 16

*Schrader v. Dist. Att'y of York Cnty*.,
74 F.4th 120 (3d Cir. 2023) .......... 15, 17

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) .......... 5

*Sheehan v. Gregoire*,
272 F. Supp. 2d 1135 (W.D. Wash. 2003) .......... 10, 15

*United States v. Alvarez*,
567 U.S. 709 (2012) .......... 13, 16

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000) .......... 8, 12, 13, 16

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 5

*Univ. Ins., LLC v. Allstate Ins. Co*.,
564 F. Supp. 3d 934 (W.D. Wash. 2021) .......... 7

*Universal Life Church Monastery Storehouse v. King*,
No. 2:19-CV-301-RSL, 2019 WL 2524993 (W.D. Wash. June 19, 2019) .......... 4

*Victory Processing, LLC v. Fox*,
937 F.3d 1218 (9th Cir. 2019) .......... 16

*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015) .......... 13

*X Corp. v. Bonta*,
116 F.4th 888 (9th Cir. 2024) .......... 10, 12, 13

**Statutes**

C.R.S. § 6-1-113(2)(b) (2005) .......... 17

C.R.S. § 6-1-113(2.9) .......... 18

C.R.S. § 6-1-301 .......... 13

C.R.S. § 6-1-303 .......... 5, 6

C.R.S. § 6-1-304(4)(a)(I) .......... *passim*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

C.R.S. § 6-1-305(1)(c) ... 16, 17

C.R.S. § 24-72-202(6)(a) ... 14

C.R.S. § 304 ... 5

1993 Colo. Legis. Serv. H.B. 93-1144 (West) ... 5

Colorado Consumer Protection Act ... 17

Telemarketing Fraud Act ... 1, 4, 5, 18

W. Va. Code § 5A-8-24(e) ... 9, 10

**Other Authorities**

*2025 Voter Registration Statistics*, Colorado Secretary of State, https://tinyurl.com/dsdnh3jnd (last accessed Sept. 21, 2025) ... 14

U.S. Constitution, First Amendment ... *passim*

*Attorney / LLP Search & Disciplinary History*, Office of Attorney Regulation Counsel, https://tinyurl.com/ojndh347w (last accessed June 25, 2025) ... 16

*Data Reveals Landline Phone Decline Statistics*, U.S. Chamber of Commerce (last updated July 24, 2024), https://tinyurl.com/dshn7fdhd ... 14

*Directory*, Cambridge Dictionary, https://tinyurl.com/ghnejwj1 (last accessed Sept. 21, 2025) ... 7

*Directory*, Merriam-Webster Dictionary, https://tinyurl.com/gjtehns2 (last accessed Sept. 21, 2025) ... 7

Fed. R. Civ. Proc. 12(b)(6) ... 5

Gary Harmon, *Cell Phone Bill Will Go Before Legislature*, Grand Junction Daily Sentinel (Feb. 23, 2005) https://tinyurl.com/fhfd48dna ... 6

https://tinyurl.com/723hdnj4f (last accessed Sept. 21, 2025) ... 14

https://tinyurl.com/gu42n2n1 (last accessed Sept. 21, 2025) ... 2

https://www.zoominfo.com/data (last accessed Sept. 21, 2025) ... 3

https://www.zoominfo.com/products/sales (last accessed Sept. 21, 2025) ... 2

*Public Voter Data and Information Requests FAQs*, Colorado Secretary of State, https://tinyurl.com/fndfhd4ns (last accessed Sept. 21, 2025) ... 14

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*State of Colorado Employee Directory Search*, State of Colorado, https://tinyurl.com/dndsj38549j (last accessed June 25, 2025) ........ 15

*TRACER: Search: Candidates*, Colorado Secretary of State, https://tinyurl.com/askfjf485u3 (last accessed Sept. 21, 2025) ........ 15

*Voter List*, Adams County, https://tinyurl.com/dh37jsdnk (last accessed Sept. 21, 2025) ........ 14

*Voter Lists*, Douglas County, https://tinyurl.com/00wndf3de (last accessed Sept. 21, 2025) ........ 14

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

## PRELIMINARY STATEMENT

Plaintiff Kelly Huiskamp, a Colorado resident, filed this putative class action in Washington state court, targeting ZoomInfo under Colorado's Prevention of Telemarketing Fraud Act ("PTFA"). The claim hinges on a long-dormant 2005 amendment that has never been construed by any court, but bans the "list[ing]" of cell phone numbers in a "directory" for a "commercial purpose." This suit is part of a broader campaign by the plaintiff's counsel, who have filed near-identical cases across the country, carefully avoiding Colorado courts.

ZoomInfo provides a business-to-business database that includes company contact information. The platform has more than just data, though. It offers a suite of outreach tools and automation features to provide various forms of business intelligence. Among its many functions, the ZoomInfo platform can display professionals' names, job titles, work emails, and in some cases, business phone numbers (including cell phone numbers) but not as a distinct category of information or for any telemarketing purpose (and many business phone numbers are, of course, not cell phone numbers). Users can preview limited data for free and purchase subscriptions to view full profiles. But ZoomInfo is not by any account a telemarketing business or platform—the use targeted by the Colorado statute.

The statute's purpose is apparent from its title: it targets telemarketing fraud. ZoomInfo, however, is not a telemarketer and does not traffic in consumer fraud. ZoomInfo provides business-to-business ("B2B") tools that may not, in fact, include cell phone numbers at all. Trying to shoehorn ZoomInfo's services into a telemarketing fraud statute distorts both the facts and the law. The amended complaint—just like the original complaint—thus unsurprisingly fails for multiple, independent reasons, none of which is curable by still-further amendment:

1. **Statute inapplicable**. The PTFA regulates cell phone "directories" sold for telemarketing to individual consumers. ZoomInfo does not publish such a directory. It provides an interactive business intelligence platform that includes, among varied tools and data, professional profiles that may include a cell phone number. That activity is far afield from what the statute covers.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

2. **Unconstitutional restriction**. Even if the PTFA applied, it is unconstitutional. The statute expressly discriminates against speech by subject matter—prohibiting publication of cell phone numbers, while permitting the same information through other channels, including by and from the government. Such content-based regulation fails strict scrutiny and violates the First Amendment.

3. **Relief barred**. Plaintiff seeks only class-wide statutory damages. But the PTFA authorizes statutory damages only for individual claims. Under Colorado law, class claims are limited to actual damages—yet plaintiff alleges none.

In short, plaintiff invokes a never-tested provision of a telemarketing-fraud statute to attack a B2B business tool that is neither a directory nor a consumer telemarketing service—and certainly not both. Plaintiff's claims are legally unsupportable, constitutionally infirm, and procedurally and substantively barred. The amended complaint should be dismissed in full.

## BACKGROUND

ZoomInfo operates an online, searchable database that includes professional contact information, including names, company names and descriptions, company phone numbers, work emails, job titles, and company addresses. *See ZoomInfo*;[1] Am. Compl. ¶¶ 16, 18, 19. Beyond mere data, ZoomInfo offers a suite of business intelligence tools designed to help companies with sales, marketing, and recruiting. *See, e.g.*, *ZoomInfo: Sales*.[2] Its platform includes features such as AI-powered insights, sales intelligence tools, and workflow automation. *See ZoomInfo: Our Data*.[3] ZoomInfo sources information from a variety of places, including public websites and voluntary user contributions. *See id*. The platform hosts millions of records, *see id.*, many of which have never been previewed or viewed by users and remain "unseen" in its database.

Plaintiff Kelly Huiskamp is a Colorado resident. Am. Compl. ¶ 10. The only factual allegations in the Complaint specific to plaintiff appear in Paragraph 10, which states: "Plaintiff's

[1] https://tinyurl.com/gu42n2n1 (last accessed Sept. 21, 2025).
[2] https://www.zoominfo.com/products/sales (last accessed Sept. 21, 2025).

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

cellular telephone number was listed by [ZoomInfo] in its directory, available at zoominfo.com, to advertise and/or actually sell products and services." *Id.*

The Amended Complaint does not include screenshots or other direct evidence showing plaintiff's phone number was listed. Instead, it makes general factual allegations concerning "Coloradans" as a group (*e.g.*, *id.* ¶¶ 19, 20, 26, 33) and presents screenshots of profile information related to individuals who are not the plaintiff—namely, a ZoomInfo employee and two unaffiliated professionals at other companies (*id.* ¶ 26), ZoomInfo's CEO (*id.* ¶ 32), and several employees at Nike (*id.* ¶ 29), HEB (*id.* ¶ 31), or other unknown companies (*id.* ¶ 30)—and who do not, at least according to the images, appear to live in Colorado. These examples are offered to support the broader assertion that ZoomInfo operates an "online business-to-business … service [that] compiles and organizes … contact details, business categories, industry, size, location, and other relevant data." *Id.* ¶ 16 (quotation omitted). The Complaint further claims that ZoomInfo and its competitors "monetize said personal details through their directories—some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee." *Id.* ¶ 17. Notably, the Amended Complaint does not allege that ZoomInfo (as opposed to its "competitors") is ad-supported or gives users "free access" to cell phone numbers (in fact, neither is true of ZoomInfo).

Plaintiff alleges that ZoomInfo's "directory is available on "zoominfo.com," and that "Zoominfo.com" (notably, the website, not the alleged "directory" supposedly "available" on the website) is "accessible" to "individuals" who hold a ZoomInfo account and are logged into that account. *Id.* ¶ 18. Plaintiff then alleges ZoomInfo "lists four types of contact information for Coloradans"—specifically, a "headquarters" phone number, a business email, a direct phone number and a cell phone number (*id.* ¶ 19)—and then shows users of only the ZoomInfo Lite subscription (which is the free plan) a "dark (active) icon" when it has data for the category for a particular person, and if it does, "display[s]" the landline, and/or cell phone number in the "redacted form" of "(***) ***-**** (M)" (*id.* at ¶ 20). (Notably, in this "redacted form," none of the actual digits in the phone

[3] https://www.zoominfo.com/data (last accessed Sept. 21, 2025).

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

number is actually displayed.) Plaintiff then alleges this "display" of phone numbers (which, again, contains no phone numbers) in fact "advertise[s]" the phone numbers, to "entice" free users to purchase paid subscriptions in various tiers. *Id.* at ¶ 20-25.

Plaintiff alleges that paid subscription holders can then search for individuals and companies and access their information—including individual cell phone numbers (*id.* ¶¶ 19, 20, 26). Plaintiff then presents a series of screenshots purporting to demonstrate the search process. *Id.* ¶¶ 26-33. Plaintiff does not, however, allege that this search function is available on the portions of ZoomInfo's website accessible without an account (in fact it is not; it is available only to ZoomInfo subscribers logged into their accounts). Plaintiff does not allege that his own number was ever viewed or accessed by anyone—including his attorneys. Nor does the Amended Complaint offer any facts linking any specific cell phone number—including plaintiff's—to subscription purchases, or allege any specific, quantifiable monetary injury arising from ZoomInfo's inclusion of cell phone numbers in its database.

Based on ZoomInfo's alleged inclusion of cell phone numbers, plaintiff asserts a single cause of action under the PTFA, C.R.S. § 6-1-304(4)(a)(I), on behalf of a proposed class of "all Colorado residents whose cell phone numbers were listed on zoominfo.com without their affirmative consent." *Id.* ¶ 42.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible" on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

A claim is not plausible unless factual allegations permit the "reasonable inference" that the defendant is liable for the conduct alleged. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Facts that are "merely consistent with" liability fail to state a claim. *Id.* (quotation omitted). Courts disregard "unsupported legal conclusions, which are not entitled to the assumption of truth," and determine "whether the remaining well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Universal Life Church Monastery Storehouse v. King*, No. 2:19-CV-301-RSL, 2019 WL 2524993, at

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*1 (W.D. Wash. June 19, 2019) (citing *Iqbal*, 556 U.S. at 678). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (quotation omitted).

The Court may consider documents referenced extensively in the complaint, documents whose contents are alleged in the complaint and whose authenticity is undisputed by the parties, and matters of judicial notice. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042–43 (9th Cir. 2015); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ARGUMENT

## I. THE COMPLAINT DOES NOT PLEAD A PTFA VIOLATION

### A. Statutory Background Of The PTFA

Colorado's Prevention of Telemarketing Fraud Act was enacted in 1993 to combat fraudulent telemarketing practices. *See* 1993 Colo. Legis. Serv. H.B. 93-1144 (West). It targets misleading sales calls, mandates telemarketer registration, provides a three-day cancellation window for telemarketing purchases, and requires disclosure of cancellation rights and prompt processing of refunds—among other detailed regulations of the telemarketing business. *See* C.R.S. §§ 6-1-303, 304.

Plaintiff's claim, however, has nothing to do with telemarketing calls—fraudulent or otherwise. Instead, it relies exclusively on a little-known 2005 amendment to the PTFA, which states:

> On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly … [l]ists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent[.]

C.R.S. § 6-1-304(4)(a)(I).

Plaintiff alleges ZoomInfo violated this provision by including some cell phone numbers in its business contact "directory." *See* Am. Compl. ¶¶ 53-56. The Amended Complaint offers no specific allegations of actual telemarketing, consumer harm, or fraud—core concerns of the statute. Instead, it cites speculative research from 2005 and 2006, suggesting consumers might be reluctant to list cell phone numbers in directories, perhaps to avoid spam calls or because they view their cell phones as more private. *Id.* ¶ 3 (citations omitted). And plaintiff cites various other reports from news outlets,

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE
Page 5
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

the FTC and the FBI regarding scams of the elderly, and "SIM swappers"—i.e. a type of cryptocurrency "hacker," "[s]ome" of whom, Plaintiff alleges, "have worked directly with ransomware gangs from Eastern Europe." *Id*. ¶¶ 39-41. This research and reporting is not part of the legislative record, nor does it offer evidence relevant to this plaintiff or ZoomInfo's practices.

Plaintiff also relies on a 2005 news article quoting then-State Rep. Mark Cloer, who expressed personal concerns that unsolicited calls to cell phones impose a financial cost on recipients. *See id.* ¶ 2 (citing Gary Harmon, *Cell Phone Bill Will Go Before Legislature*, Grand Junction Daily Sentinel (Feb. 23, 2005)).[4] But those comments are not part of the legislative record either, and are not tied to any official findings or the cited studies. Nor does plaintiff allege he incurred any such cost or received any calls at all.

Even so, plaintiff attempts to anchor this amendment to the PTFA's original 1993 statement of purpose (*id.* ¶ 4)—which never mentions cellular phones, directories, or call costs. That statement of purpose focused on widespread fraud targeting vulnerable consumers through landline telemarketing. *See* C.R.S § 6-1-301. It references deceptive calls, financial loss, and abuse of elderly and homebound consumers. *Id.* The Amended Complaint alleges none of those harms.

In short, the 1993 PTFA was not intended to cover services like ZoomInfo's, and the 2005 amendment offers no support for plaintiff's claim here. As further explained below, the Amended Complaint fails to plead any conduct falling within the scope of the statute as enacted or amended.

### B. <u>ZoomInfo's Service Is A Searchable Business Database—Not A "Directory" Under The PTFA</u>

Against the backdrop of the PTFA's narrow and specific statutory focus, ZoomInfo's service does not qualify as a "directory" of "cellular telephone numbers" within the meaning of the statute. ZoomInfo provides a business-focused platform featuring professional profiles of individuals and businesses that sometimes include a cell phone number—but never as a distinct offering or monetized category.

---

[4] https://tinyurl.com/fhfd48dna.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

The 2005 amendment has never been construed by any court and does not define "directory." In such instances, courts turn to ordinary dictionary definitions to determine plain meaning. *See, e.g.*, *Metro One Telecommunications, Inc. v. Comm'r*, 704 F.3d 1057, 1061 (9th Cir. 2012) (consulting dictionary); *Conrad v. Phone Directories Co*., 585 F.3d 1376, 1381 (10th Cir. 2009) ("We may consult a dictionary to determine the plain meaning of a term."). Here, dictionary definitions of "directory" include "an alphabetical or classified list (as of names and addresses),"[5] or "a list of telephone numbers, names, addresses, or other information."[6] The common thread is organization by name or category in list form.

ZoomInfo's platform is not a "directory" of cell phone numbers by any such definition. It is a dynamic, searchable database of professional and business information. It does not present cell phone numbers as a standalone category, nor does it separately list, sort, or monetize them. (Business contact numbers are, of course, often landlines). Where a cell phone number is included, it appears only as part of a comprehensive professional profile, not as the discrete product being sold.[7]

ZoomInfo sells access to the full database via subscription—not access to any subset of numbers, and certainly not to a "directory" of cell phones. That distinction matters. The statute does not apply to every internet publication that incidentally contains cell phone numbers—such an interpretation would sweep in potentially any social media or business networking site where users have the option to list contact information (Meta, LinkedIn, countless others). That would be an absurd and unintended result. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 670 (9th Cir. 2021) (courts "avoid absurd results when interpreting statutes"); *Colorado Motor Vehicle Dealer Bd. v. Freeman*, 375 P.3d 111, 114 (Colo. 2016) ("when construing a statute we read and consider it as a whole … and we seek to avoid absurd results") (citation omitted); *see also Univ. Ins., LLC v. Allstate*

---

[5] *Directory*, Merriam-Webster Dictionary, https://tinyurl.com/gjtehns2 (last accessed Sept. 21, 2025).

[6] *Directory*, Cambridge Dictionary, https://tinyurl.com/ghnejwj1 (last accessed Sept. 21, 2025).

[7] Plaintiff's "gotcha" attempt to invoke ZoomInfo's statement in *Leving Siegel v. ZoomInfo Technologies LLC*—referring to its services as a "directory" in the context of that case—is unavailing. The entire thrust of ZoomInfo's position in *Leving Siegel* was, in fact, that providing a free preview of that plaintiff's telephone number was *not* use of her identity for a commercial purpose—and that interpretation would violate the First Amendment. No. 1:21-cv-02032 (N.D. Ill.) (Dkt. 14 at 2).

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE

Page 7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*Ins. Co*., 564 F. Supp. 3d 934, 941 (W.D. Wash. 2021) (courts "avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences") (quotation omitted). But the statute does not sweep that broadly; rather, it targets lists of cell phone numbers distributed for commercial use. The statute's plain meaning, reasonably read, does not reach general business databases where a cell phone number might appear among other varied information of value to users.

Interpreting the PTFA to cover ZoomInfo's service would also raise serious constitutional concerns. As discussed further herein, *infra* Section II, the First Amendment protects the dissemination of truthful, publicly available information—including business contact details—and, as construed by the plaintiff, Section 304(4)(a)(I) does not withstand constitutional scrutiny. Courts routinely construe statutes to avoid constitutional problems where a plausible alternative reading exists. *See, e.g*., *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). Construing the statute to exclude ZoomInfo's service would avoid the constitutional questions in this case (and there is no contrary legislative intent).

## II. THE PTFA BAN ON LISTING CELLULAR PHONE NUMBERS FACIALLY VIOLATES THE FIRST AMENDMENT

Section 304(4)(a)(I) of the PTFA is a content-based restriction on fully protected speech, subject to strict scrutiny under the First Amendment. *See Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015). If the Court rules that the PTFA attempts to sweep in ZoomInfo's service, the Court should find the statute, so construed, is neither narrowly tailored nor the least restrictive means of achieving Colorado's interests and therefore fails a facial challenge under strict scrutiny. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).[8]

[8] ZoomInfo reserves the right to later bring an as-applied challenge under the First Amendment.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

### A. <u>Section 304(4)(a)(I) Is A Content-Based Restriction On Fully Protected Speech That Triggers Strict Scrutiny</u>

A restriction is content-based if it "targets speech based on its communicative content … [*i.e.*,] it applies to particular speech because of the topic discussed or the idea or message expressed." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quotation omitted). It is well-settled that laws that single out specific categories of truthful, non-misleading information are "obvious content-based restrictions." *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020). The PTFA targets one discrete piece of information—cell phone numbers—while permitting dissemination of all other professional information. That selective prohibition is no different from the ban struck down in *IMDb.com*, where California prohibited online profiles from listing an individual's age, but not other biographical details. *Id.*; *see also Reed*, 576 U.S. at 169 (sign regulation was content-based because it "singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter").

Section 304(4)(a)(I) clearly does so, as it "defin[es] regulated speech by particular subject matter," *Reed*, 576 U.S. at 163—specifically, whether a covered person has listed a "cellular telephone number" rather than other information. *See* C.R.S. § 6-1-304(4)(a)(I). Because it "prohibits the dissemination of one type of speech," *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020), Section 304(4)(a)(I) is an "obvious" content-based restriction. *Reed*, 576 U.S. at 163; *see Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc) (a content-based restriction "singles out particular content for differential treatment").

The recent decision in *Jackson v. WhitePages, Inc.* confirmed this principle in upholding a facial constitutional challenge to West Virginia's "Daniel's Law," prohibiting disclosure of the home address or "unpublished home or personal telephone number" of certain public officials. No. 1:24-CV-102, 2025 WL 2407201, at *1 (N.D.W.Va. Aug. 19, 2025) (quoting W. Va. Code § 5A-8-24(e)). *Jackson* ruled that the statute impermissibly regulated speech based on content, because it "prohibits public discussion of an entire topic—the home addresses and phone numbers of protected individuals." *Id.* at *8 (collecting authorities). The statute therefore triggered strict scrutiny and failed

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

that scrutiny because there were less restrictive available alternatives—such as laws requiring notice, and/or criminal intent to harass or intimidate. *Id*. at *16 (collecting authorities).

*Jackson* is consistent with a long line of authority recognizing that restrictions on disclosing phone numbers or similar personal data are content-based. *See, e.g.*, *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012) (yellow pages containing addresses and phone numbers); *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1146 (W.D. Wash. 2003) (same re: addresses and phone numbers); *Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 335 (D.N.J. 2024) (same); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1012-13 (E.D. Cal. 2017) (same); *Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244, 1250 (N.D. Fla. 2010) (same); *see also IMDb.com*, 962 F.3d at 1120 (date of birth and age information). Section 304(4)(a)(I) explicitly regulates the disclosure of phone numbers, and plaintiff's theory of liability rests entirely on that regulation. Nothing in the statutory text supports any alternative characterization.

## B. The Statute Is Subject to Strict Scrutiny

As a rule, content-based restrictions are subject to strict scrutiny. *See IMDb.com*, 962 F.3d at 1121; *cf. Reed*, 576 U.S. at 165 (strict scrutiny applies "regardless of the government's benign motive"). Narrow categories of speech receive lesser protection, such as commercial speech, which is evaluated under intermediate scrutiny. *See Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).

But Section 304(4)(a)(I) does not regulate commercial speech, and any argument otherwise is foreclosed by binding precedent. The essence of commercial speech is that it "does 'no more than propose a commercial transaction.'" *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993) (quoting *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 66 (1983)). Advertising restrictions thus typically fall within intermediate scrutiny. *See, e.g., Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001); *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004). Although the Ninth Circuit has identified a few additional forms of commercial speech, these are limited. *See X Corp. v. Bonta*, 116 F.4th 888, 901 (9th Cir. 2024) ("To the extent our circuit has recognized exceptions to [the] general rule, those exceptions are limited."). The Ninth Circuit applies

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

three factors from *Bolger* to assess such cases: (1) whether the speech is an advertisement; (2) whether it refers to a particular product; and (3) whether the speaker has an economic motivation. *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger*, 463 U.S. at 66–67); *see also Dex Media West*, 696 F.3d at 958.

The speech regulated by Section 304(4)(a)(I)—listing cell phone numbers in a directory—is not directed to advertisements or a proposed economic transaction and falls well outside any recognized exception. To start, the law does not regulate proposals to transact in cell phone numbers—it prohibits the listing itself. *See* C.R.S. § 6-1-304(4)(a)(I) (a person commits an unlawful telemarketing practice by "knowingly: (I) List[ing] a cellular telephone number in a directory for a commercial purpose"). This provision is not a restriction on *advertising* that such listings exist; it is a direct prohibition on *the listing*. *Cf. IMDb.com*, 962 F.3d at 1122 (resume-like profiles containing biographical information are not commercial speech). Plaintiff's failure to reference or include any advertisements by ZoomInfo including any listing of cell phone numbers confirms the point.

Applying the *Bolger* factors likewise confirms the statute does not target commercial speech. First, a listing is not an "advertisement." *Hunt*, 638 F.3d at 715. It is simply information—potentially sold, shared, or published, but not necessarily in connection with any proposed exchange. Second, to the extent a listing in a business intelligence platform is a "product," the listing does not "refer[] to a particular product." *Id*. It is the product. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) ("Hallmark's card is not advertising the product; it *is* the product") (emphasis in original). A stand-alone 10-digit number is not an ad for any other product.

That leaves only the "economic motivation" prong. *See Hunt*, 638 F.3d at 715. Section 304(4)(a)(I)'s reference to "commercial purpose" attempts to capture this factor. But economic motivation alone is "clearly … insufficient" to transform fully protected speech into commercial speech. *See Bolger*, 463 U.S. at 67; *see also Dex Media West*, 696 F.3d at 960; *accord Jackson*, 2025 WL 2407201, at *10 (same). As the Supreme Court has made clear, "the degree of First Amendment protection is not diminished merely because the [protected expression] is sold rather than given away." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 756 n.5 (1988); *see Joseph Burstyn*,

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE
Page 11
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

*Inc. v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment."). Because only one of the *Bolger* factors arguably applies, the regulated speech is not commercial. *See IMDb.com*, 962 F.3d at 1122; *Dex Media West*, 696 F.3d at 960.[9]

Although Section 304(4)(a)(I) would also fail intermediate scrutiny for lack of tailoring, *see Discovery Network*, 507 U.S. at 424–28; *infra* pp. 13–15, that is not the applicable standard. The recent decision in *Jackson* confirms this as well, expressly rejecting arguments that disclosure of addresses and phone numbers on "people search" websites are commercial speech because they are "driven by an economic motivation," and/or or are comparable to advertisements because companies "will post the home addresses and phone numbers of persons to draw customers to their sites, who in turn will then see advertisements for other goods and services;" *Jackson* confirms that "[b]oth of these arguments would apply just as well to The New York Times." 2025 WL 2407201, at *10. Section 304(4)(a)(I) is a content-based restriction that does not regulate commercial speech, and no other basis exists for reducing the level of protection. Strict scrutiny applies. *See IMDb.com*, 962 F.3d at 1125.

### C. Section 304(4)(a)(I) Facially Fails Strict Scrutiny

Strict scrutiny "is a demanding standard." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011). Content-based restrictions are "presumptively unconstitutional," *Reed*, 576 U.S. at 163, particularly when they regulate truthful speech. *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[S]tate action to punish the publication of truthful information seldom can satisfy constitutional standards.") (quotation omitted); *Playboy Ent. Grp.*, 529 U.S. at 818 ("It is rare that a regulation restricting speech because of its content will ever be permissible."). To survive, a law must serve a compelling state interest and be narrowly tailored to that interest. *Reed*, 576 U.S. at 171. Moreover,

---

9 The Ninth Circuit recently confirmed this application of the *Bolger* factors by enumerating some non-core instances of commercial speech. None are analogous to the speech regulated by Section 304(4)(a)(I). *See X Corp.*, 116 F.4th at 901 (listing "targeted, individualized solicitations; contract negotiations; and retail product warnings") (citations omitted); *see also id.* (characterizing the above as speech that "does not directly or exclusively propose a commercial transaction," but still "communicates the terms of an actual or potential transaction").

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

"[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy Ent. Grp.*, 529 U.S. at 813.

Facial constitutional challenges under the First Amendment require only a showing that "a substantial number of [the law's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." *Id.* (quotation omitted); *see Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).

Even assuming Section 304(4)(a)(I) advances a compelling interest—which ZoomInfo disputes—the statute is neither narrowly tailored nor the least restrictive means to achieve that interest. Because these defects appear in "every application" of the law, they render the statute facially invalid. *See NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1116 (9th Cir. 2024); *X Corp.*, 116 F.4th at 899.

**No Compelling State Interest**. To satisfy strict scrutiny, a law must "further[] a compelling government interest." *Reed*, 576 U.S. at 171. The PTFA's preamble cites two interests: curbing "fraudulent and deceptive commercial telephone solicitation" and protecting "the integrity of the telemarketing industry." C.R.S. § 6-1-301.[10]

The latter interest—the integrity of the telemarketing industry—is not recognized in case law as compelling and should not weigh in the First Amendment analysis. As to curbing fraudulent and deceptive telemarketing, that interest may or may not be compelling. But "to recite the Government's compelling interests is not to end the matter." *United States v. Alvarez*, 567 U.S. 709, 725 (2012). The government must still carry its "heavy burden" when regulating protected speech. *Id.* at 726. Even assuming the asserted interest is compelling—which ZoomInfo does not concede—the statute still fails because it is poorly tailored and imposes more restrictions than necessary.

**No Narrow Tailoring**. A law is not narrowly tailored if it is "seriously underinclusive" or "overinclusive." *See Ent. Merchants Ass'n*, 564 U.S. at 805. Underinclusiveness can signal that the law "does not actually advance a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

(2015). Where a law regulates one category of speech but allows "unlimited numbers of other types" that cause the same harm, *Reed*, 576 U.S. at 172, it is "wildly" underinclusive—and this alone may render it unconstitutional. *See Ent. Merchants Ass'n*, 564 U.S. at 802.

Section 304(4)(a)(I) is fatally underinclusive. It targets certain channels of speech while leaving untouched countless other means of distributing the same information. The statute restricts the listing of cell phone numbers in a "directory" for a commercial purpose without affirmative consent, ostensibly to prevent fraudulent telemarketing. But it categorically excludes landline telephone numbers—which if anything are *more* likely to be used to target elderly Coloradans, who are more likely to have only landlines—and it leaves many other distribution channels entirely unregulated.[11]

For example, Colorado law makes voter phone numbers (including cell phone numbers) publicly accessible upon request unless marked confidential. *See Public Voter Data and Information Requests FAQs*, Colorado Secretary of State;[12] C.R.S. § 24-72-202(6)(a). County voter lists show that many voters voluntarily provide these numbers. *See, e.g., Election Data Access and Request Form*, Boulder County;[13] *Voter Lists*, Adams County;[14] *Voter Lists*, Douglas County.[15] Thus, hundreds of thousands—perhaps millions—of phone numbers are lawfully available through public records, even as Section 304(4)(a)(I) bars the same listings by ZoomInfo (under plaintiff's interpretation of the statute). *See 2025 Voter Registration Statistics*, Colorado Secretary of State.[16]

---

[10] In a 2005 news story that plaintiff quotes, *see* Compl. ¶ 2, Rep. Cloer also expressed concern about individuals being charged for unsolicited calls. *See* Harmon, *supra*. But most modern cell phone plans offer unlimited calling and texting. If that interest ever were compelling, it is not now.

[11] The sources listed in this section do not distinguish between cell phone numbers and landline numbers. But since most Colorado residents do not have landlines (71.6% as of 2020) and almost no Americans have a landline but no cell phone (1.3% as of 2022), it is very likely that most of the relevant phone numbers are cell phone numbers. *See Data Reveals Landline Phone Decline Statistics*, Chamber of Commerce (last updated July 24, 2024), https://tinyurl.com/dshn7fdhd; *see also id.* (noting that "older adults are more likely to be available via landline").

[12] https://tinyurl.com/fndfhd4ns (last accessed Sept. 21, 2025).

[13] https://tinyurl.com/723hdnj4f (last accessed Sept. 21, 2025).

[14] https://tinyurl.com/dh37jsdnk (last accessed Sept. 21, 2025).

[15] https://tinyurl.com/00wndf3de (last accessed Sept. 21, 2025).

[16] https://tinyurl.com/dsdnh3jnd (last accessed Sept. 21, 2025).

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

Colorado also publishes phone numbers in other contexts: campaign finance reports, employee directories, and attorney directories. Required disclosure reports contain phone numbers for political candidates. *See TRACER: Search: Candidates*, Colorado Secretary of State.[17] As of June 25, 2025, Colorado maintained a searchable employee directory, which included the phone numbers of state employees. *See State of Colorado Employee Directory Search*, State of Colorado.[18] And the state supreme court manages a directory of Colorado-barred attorneys, which includes phone number information. *See Attorney / LLP Search & Disciplinary History*, Office of Attorney Regulation Counsel.[19] These public disclosures expose the statute's inconsistency—it forbids private distribution while the government itself shares the same data.

Courts routinely strike down such underinclusive laws or enjoin their enforcement. *See, e.g.*, *Ostergren v. Cuccinelli*, 615 F.3d 263, 286 (4th Cir. 2010); *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 127 (3d Cir. 2023); *cf. Sheehan*, 272 F. Supp. 2d at 1147. Because the state has voluntarily disclosed much of the regulated information, it cannot credibly claim a compelling interest in prohibiting private dissemination of the same. That fact alone defeats the law under *Reed* and *Entertainment Merchants Association*.

Moreover, the statute excludes many non-governmental sources. Its "commercial purpose" limitation (C.R.S. § 6-1-304(4)(a)(I)) exempts churches, schools, political organizations, and others who might share the same phone numbers for different ends. Finally, the law is irrational in that it prohibits others from listing a cell phone number even if the subject individual has himself published it online.

All these reasons render Section 304(4)(a)(I) "woefully underinclusive." *IMDb.com*, 962 F.3d at 1127. Colorado has singled out certain speakers—businesses that publish undefined "directories"—without offering any persuasive justification. That discriminatory targeting is constitutionally fatal. *See Ent. Merchants Ass'n*, 564 U.S. at 802.

---

[17] https://tinyurl.com/askfjf485u3 (last accessed Sept. 21, 2025).
[18] https://tinyurl.com/dndsj38549j (last accessed June 25, 2025).

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE

Page 15

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

**Not the Least Restrictive Means**. When a law suppresses large amounts of speech, strict scrutiny demands that it be "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU* ("*Ashcroft II*"), 542 U.S. 656, 666 (2004); *see Reno v. ACLU*, 521 U.S. 844, 874 (1997); *Playboy Ent. Grp*., 529 U.S. at 813. Because plaintiff defends the law's constitutionality, he bears the burden of proving that "proposed less restrictive alternatives are less effective." *Ashcroft II*, 542 U.S. at 666. That burden cannot be met with mere assertions. *See Alvarez*, 567 U.S. at 729; *see also Playboy Ent. Grp.*, 529 U.S. at 817–24; *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019).

There are several obvious, less restrictive alternatives:

1. **Exempt already-public information**. Listings of cell phone numbers previously disclosed by the government or the subjects themselves could be excluded from coverage. *See supra* pp. 14-15.

2. **Target wrongful conduct, not protected speech**. As the Supreme Court has said, "[t]he normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it." *Bartnicki*, 532 U.S. at 529; *see IMDb.com*, 962 F.3d at 1123. If Colorado seeks to prevent fraud or harassment, it can prohibit those acts without restricting protected publication of cell phone numbers.

3. **Limit remedies**. The extent of penalties affects the burden on speech. *See Ashcroft II*, 542 U.S. at 660; *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). Here, violations of Section 304(4)(a)(I) give rise to consequential damages, attorney's fees and costs, and a statutory penalty (even without proof of harm). *See* C.R.S. § 6-1-305(1)(c). These penalties could chill lawful speech—especially in class actions purporting to aggregate thousands of claims. *See infra* pp. 17-18. Less burdensome remedies (*e.g.*, actual damages only, injunctive relief only, or scienter-based liability

[19] https://tinyurl.com/ojndh347w (last accessed Sept. 21, 2025).

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

tied to actual or at least potential harm) would achieve the same goals with fewer speech restrictions. *See Schrader*, 74 F.4th at 127; *Publius*, 237 F. Supp. 3d at 1021.

Because Section 304(4)(a)(I) is neither narrowly tailored nor the least restrictive means of achieving any compelling interest, it fails strict scrutiny. The Court should dismiss the complaint.

## III. THE PTFA DOES NOT ALLOW CLASS-WIDE STATUTORY DAMAGES FOR VIOLATIONS OF THE 2005 AMENDMENT

Even if plaintiff had stated a viable claim under the PTFA, which ZoomInfo disputes, the sole monetary relief sought—class-wide statutory damages, *see* Am. Compl. ¶ 62—is not authorized by the statute.[20] Regardless of whether the cause of action survives, the Court should dismiss the demand for class-wide statutory damages.

The Colorado legislature provided for limited statutory damages only for individual claims brought under the PTFA. The PTFA is part of the Colorado Consumer Protection Act ("CCPA"). When the relevant provision of the PTFA was enacted in 2005, it provided that a plaintiff may recover limited statutory damages of $300 to $500 for a first offense. *See* C.R.S. § 6-1-305(1)(c). Critically, this section provides only for individual statutory damages—and says nothing about class relief.

At the time § 6-1-305(c) was enacted, the CCPA authorized damages recovery *only* in individual actions. C.R.S. § 6-1-113(2)(b) (2005) ("*Except in a class action* [or certain deceptive trade practices suits] and notwithstanding any other law," any person in "a private civil action" may recover the greater of "actual damages," "[f]ive hundred dollars," or, in cases of "bad faith," three times actual damages.) (emphasis added).[21] In 2022, Colorado amended the CCPA to allow actual damages in class

[20] In the Amended Complaint, Plaintiff adds allegations that Coloradans' personal data has "real, quantifiable value," and/or "economic value" (e.g. *id.* at ¶¶ 36, 37, 58). But Plaintiff makes no attempt to actually quantify any such value and does not, in any event, even seek actual damages in the Prayer for Relief.

[21] The CCPA was largely modeled on the Revised Uniform Deceptive Trade Practices Act. That model law does not authorize private plaintiffs to recover monetary damages—only injunctive relief. *Hall v. Walter*, 969 P.2d 224, 232 (Colo. 1998) (en banc). Prior to the 2022 amendment, multiple courts interpreting this provision held that, under the CCPA, class-wide monetary damages were barred altogether. *See, e.g.*, *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-2432-WYD-KMT, (footnote continued)

actions—but notably did not authorize statutory damages for class relief: "In a case certified as a class action, a successful plaintiff may recover actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs." C.R.S. § 6-1-113(2.9) (2022). Despite the presence of multiple statutory damages remedies provisions in the PTFA, the 2022 CCPA amendment specifically *omitted* these remedies from class action recovery. Read together, these provisions reflect a clear legislative judgment: class actions may seek actual damages, but not statutory penalties under the PTFA.

At most, plaintiff may pursue an individual statutory damages claim for between $300 and $500. But the statute does not support class-wide recovery of those damages. Courts in analogous contexts have dismissed similar overreaches. *See, e.g.*, *Franklin v. Ocwen Loan Servicing, LLC*, No. 18-cv-3333-SI, 2018 WL 5923450, at *5-7 (N.D. Cal. Nov. 13, 2018) (dismissing statutory damage claim on a per-violation basis, when applicable statute allowed statutory damage awards on per-action basis only); *Pearson v. Geico Cas. Co.*, 2018 WL 2096348, at *10 (D. Colo. May 7, 2018), *report and recommendation adopted in relevant part*, 2018 WL 4368667 (D. Colo. June 3, 2018) ("This Court finds persuasive the opinions of the majority of courts interpreting the CCPA and finding that 'the CCPA creates no statutory liability for a defendant in a private class action'") (collecting authorities); *cf. Angulo v. Providence Health & Servs. - Washington*, No. C22-915JLR, 2024 WL 3744258, at *6 (W.D. Wash. Aug. 9, 2024), *decision clarified on reconsideration*, 2024 WL 4121881 (W.D. Wash. Sept. 9, 2024) (striking class allegations).

Accordingly, the Court should dismiss the request for class-wide statutory damages under the PTFA.

---

2015 WL 4036319, at *5-7 (D. Colo. July 1, 2015); *Martinez v. Nash Finch Co.*, No. 11-cv-2092-MSK-KLM, 2013 WL 1313899, at *3 (D. Colo. Mar. 29, 2013) ("The only reasonable reading of the statutory language is that the enumerated items of monetary relief are *not* available in class actions.") (emphasis in original).

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

## IV. THE COURT CAN CERTIFY TO THE COLORADO SUPREME COURT ANY QUESTIONS REGARDING APPLICATION OF THE PTFA

As shown above, the statutory text makes clear (i) the PTFA's "directory" provision does not apply to the type of service ZoomInfo offers; and (ii) the PTFA does not allow for class-wide statutory damages. Federal courts routinely interpret state statutes that no state court has previously construed—particularly where, as here, the plain text is dispositive. *See Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974) (certification of a question to a state supreme court is not "obligatory" and "rests in the sound discretion of the federal court"). Accordingly, both are issues the Court can resolve now.

However, should the Court determine that either provision of the statute is ambiguous, the proper course is not to adopt plaintiff's novel interpretation, but to certify any questions to the Colorado Supreme Court. *See, e.g., Hamilton v. Amazon.com Servs. LLC*, 2024 WL 158760, at *1 (10th Cir. Jan. 12, 2024), *certified question answered*, 2024 CO 60, 555 P.3d 620 (certifying "novel question [of Colorado law] . . . to the Colorado Supreme Court"); *Curran v. Home Partner Holdings LLC*, 2024 WL 1829266, at *1 (D. Colo. Mar. 20, 2024) (same, where there was "a dearth of [Colorado] case law on several critical issues" raised in the defendant's motion to dismiss). Indeed, should the Court have any questions regarding proper interpretation of the PTFA, certification of those questions would be particularly appropriate here: there are multiple pending cases (both here and in other districts)[22] that turn on these same issues, which no Colorado court has ever addressed. A definitive ruling from the Colorado Supreme Court would therefore conserve judicial resources, ensure uniformity, and respect the prerogative of Colorado's highest court to say what its law means.

## CONCLUSION

For these reasons, ZoomInfo's motion to dismiss should be granted.

---

22 *See, e.g., Larancuent v. Spokeo*, No. 2:25-cv-04935-FMO-JC (C.D. Cal.); *Clark v. Whitepages, Inc*., 2:25-cv-00810-TL (W.D. Wash.); *McClure v. RocketReach, LLC*, No. 2:25-cv-00986-TL (W.D. Wash.); *Quinones v. Datanyze*, LLC, No. 25-cv-1977 (D.Colo.); (*Hutchings, et al. v. Lusha Systems, Inc*., No. 1:25-cv-01908-NRN (D. Colo.), *Holland Adinoff v. West Publ'g Corp.*, No. 1:25-cv-02448-STV (D. Colo.); *Elliot v. Mississippi Tornado Alley*, LLC, No. 1:25-cv-02384-CYC (D. Colo.).

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

DATED: September 22, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Matthew Hosen*

Matthew Hosen, WSBA #54855
matthosen@quinnemanuel.com
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

Shon Morgan (*pro hac vice*)
shonmorgan@quinnemanuel.com
John W. Baumann (*pro hac vice*)
jackbauman@quinnemanuel.com
Thomas Nolan (*pro hac vice*)
thomasnolan@quinnemanuel.com
865 F. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 4443-3000

*Attorneys for Defendant ZoomInfo Technologies LLC*

*I certify that this motion contains 6801 words, in compliance with the Local Civil Rules.*

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE

Page 20

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

## **CERTIFICATION OF CONFERENCE OF COUNSEL**

Counsel for Plaintiff and Defendant have conferred on the substance of this motion to dismiss multiple times, and most recently by email and phone regarding Plaintiff's Amended Complaint on September 17, 2025.

DATED: September 22, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Matthew Hosen*

Matthew Hosen, WSBA #54855
matthosen@quinnemanuel.com
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

Shon Morgan (*pro hac vice*)
shonmorgan@quinnemanuel.com
John W. Baumann (*pro hac vice*)
jackbauman@quinnemanuel.com
Thomas Nolan (*pro hac vice*)
thomasnolan@quinnemanuel.com
865 F. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 4443-3000

*Attorneys for Defendant*
*ZoomInfo Technologies LLC*

MOTION TO DISMISS
Case No. 3:25-cv-05443-DGE

Page 21

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 22, 2025, I caused a true and correct copy of the above and foregoing document to be filed on the Court's ECF system, and thereby served on all counsel of record who have appeared in the action.

DATED this 22nd day of September, 2025, at Seattle, Washington.

s/ *Matthew Hosen*
Matthew Hosen, WSBA No. 54855

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100