THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KELLY HUISKAMP, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ZOOMINFO TECHNOLOGIES LLC, a Delaware corporation,

Defendant.

Case No. 3:25-cv-05443-TL

**PLAINTIFF'S THIRD NOTICE OF SUPPLEMENTAL AUTHORITY**

Under Local Rule 7(n) of this Court, Plaintiff Kelly Huiskamp ("Plaintiff") respectfully submits this third Notice of Supplemental Authority regarding the pending Motion to Dismiss the First Amended Complaint.  *See* ECF No. 31.

Plaintiff brings to the Court's attention the following order entered on July 22, 2026, by Judge Lindsay C. Jenkins, in *Byer v. Buildout, Inc. d/b/a ProspectNow*, Case No. No. 25-cv-12217, 2026 WL 2103957 (N.D. Ill. July 22, 2026), attached hereto as **Exhibit A**.  In *Byer*, Judge Jenkins denied defendant ProspectNow's motion to dismiss a claim brought under Colo. Rev. Stat. § 6-1-304(4)(a)(I) (the "Commercial Listing Provision" of the Colorado Prevention of Telemarketing Fraud Act ("PTFA")) and addressed arguments substantially similar to those presented in Defendant's Motion to Dismiss here, including the constitutional challenges.

Dated: July 27, 2026                            Respectfully submitted,

**EMERY REDDY PC**


By:  *s/ Timothy W. Emery*
Timothy W. Emery, WSBA No. 34078
Patrick B. Reddy, WSBA No. 34092
Paul Cipriani, WSBA No. 59991
600 Stewart St., Suite 1100
Seattle, WA 98101
Telephone: (206) 442-9106
Facsimile: (206) 441-9711
Email: emeryt@emeryreddy.com
        reddyp@emeryreddy.com
        paul@emeryreddy.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY
Telephone: (646) 837-7127
Facsimile: (212) 989-9163
Email:  jmarchese@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*pro hac vice*)
50 Main St., Ste. 475
White Plains, NY 10506
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Matthew Hosen, WSBA #54855
Quinn Emanuel Urquhart & Sullivan, LLP
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Email: matthosen@quinnemanuel.com

Derek Shaffer
Quinn Emanuel Urquhart & Sullivan, LLP
555 13th Street NW, Suite 600
Washington, DC 20004
Telephone: (202) 538-8000
Email: derekshaffer@quinnemanuel.com

Shon Morgan
John W. Baumann
Thomas Nolan
Quinn Emanuel Urquhart & Sullivan, LLP
865 F. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Email: shonmorgan@quinnemanuel.com
        jackbauman@quinnemaunel.com
        thomasnolan@quinnemanuel.com

Dated this 27th day of July, 2026 at Seattle, Washington.


/s/ Jennifer Chong
Jennifer Chong, Legal Assistant
jennifer@emeryreddy.com

# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Hayden Byer,

    *Plaintiff,*

v.

Buildout, Inc. d/b/a ProspectNow,

    *Defendant.*

No. 25 CV 12217

Judge Lindsay C. Jenkins

**MEMORANDUM OPINION AND ORDER**

Hayden Byer, a Colorado resident, discovered that his cell phone number had been listed in a real estate database owned by the Illinois-based Buildout, Inc. d/b/a ProspectNow ("ProspectNow"). He says this violates Colorado's Prevention of Telemarketing Fraud Act (PTFA), Colo. Rev. Stat. § 6-1-301 *et seq.*, which prohibits "[l]ist[ing] a cellular telephone number in a directory for a commercial purpose" without consent. *Id.* § 6-1-304(4)(a)(I). Arguing that Byer lacks standing and that, regardless, the PTFA violates the First Amendment, ProspectNow has moved to dismiss. [Dkt. 15.] For the following reasons, the motion is denied.

## I.    Background[1]

The Colorado General Assembly enacted the Prevention of Telemarketing Fraud Act (PTFA) in 1993, finding:

> "that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones."

Colo. Rev. Stat. § 6-1-301. It was amended in 2005, thereafter prohibiting "[l]ist[ing] a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing." *Id.* § 6-1-304(4)(a)(I).

---

[1]    The court accepts as true plaintiff's well-pleaded allegations and draws all reasonable inferences in his favor. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 522 (7th Cir. 2023).

1

ProspectNow, an Illinois-based corporation, sells subscriptions to an "AI based property and owner database," which "functions as a directory and allows anyone on the Internet to search for individual property owners and find their contact information, including their cell phone number." [Dkt. 1, ¶¶ 12, 17, 20.] It provides "a way for realtors or anyone else to get in touch with someone who lives at a particular property." [*Id.*, ¶ 18.] More specifically, the website touts its ability to "[a]ccess data on … properties likely to sell." [*Id.*, ¶ 17. *See also id.*, ¶ 18 ("proven analytics that predict which off-market properties are the most likely to sell in the next 12 months and puts them at the top of your list. From there, you can contact them via phone, email, or export them to the CRM of your choice."); *id.*, ¶ 20 ("off-market opportunities up to 12 months before they hit the market with our proprietary algorithm").]

Hayden Byer is a Colorado resident whose number appeared in ProspectNow's database without his consent. [*Id.*, ¶¶ 11, 26–28.] He says this violates the PTFA, and so he brings this putative class action lawsuit for injunctive and monetary relief. [*Id.*, ¶¶ 40–49.]

## II.    Legal Standard

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject-matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. In both cases, the court takes well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor. *Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023); *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). At the pleading stage, the court evaluates only whether the factual allegations "plausibly suggest" the existence of subject-matter jurisdiction under the familiar *Iqbal–Twombly* standard. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Then, to survive a motion to dismiss under Rule 12(b)(6), "a complaint's factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (quoting *Twombly*, 550 U.S. at 555 (2007)).

## III.    Analysis

ProspectNow raises three challenges to Byer's claim: (1) that Byer lacks standing to sue, (2) that the PTFA violates the First Amendment, and (3) that, in any event, statutory damages are unavailable in a PTFA class action. None are persuasive.

### A.    Article III Standing

ProspectNow first argues that Byer failed to allege a concrete injury in fact and therefore lacks Article III standing to sue. Byer, however, pleads that "listing cell

2

phone numbers without consent [] deprives Coloradans of control over their personal data and its inherent economic value."[2] [Dkt. 1, ¶ 22.] He says this harm is sufficiently analogous to the harms associated with the common law right of publicity (known also as the appropriation of likeness), and is therefore cognizable as a concrete, intangible injury. [Dkt. 20, at 10–11.[3]] The court agrees.

"Because Article III requires a concrete injury 'even in the context of a statutory violation,' legislatively identified intangible harms 'must bear a close relationship in kind to those underlying suits at common law.'" *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023) (citing *Spokeo*, 578 U.S. at 341 and *Pierre v. Midland Credit Mgmt.*, 29 F.4th 934, 938 (7th Cir. 2022)). And "because [legislatures are] well positioned to identify intangible harms that meet minimum Article III requirements, [their] judgment is also instructive and important." *Spokeo*, 578 U.S. at 341; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

"The common law recognized some right to privacy that 'encompass[es] the individual's control of information concerning his or her person.'" *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 879–80 (7th Cir. 2020) (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989)) (alterations in original). More specifically, the tort of appropriation of likeness "protects an individual's 'interest in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or others.'" *See also Rivera v. Google, Inc.*, 366 F. Supp. 3d 998, 1013 (N.D. Ill. 2018) (citing Restatement (Second) of Torts § 652C cmt. a (1977)). "This interest is invaded when a defendant uses the likeness to advertise its business or product, for some similar commercial purpose, or for its own purposes and benefit." *Id.* (cleaned up). Courts have considered the tort an appropriate analogue in circumstances like Byer's. *See Hoffower v. Seamless Contacts Inc.*, 736 F. Supp. 3d 605, 612 (N.D. Ill. 2024) (concluding that plaintiff had standing when directory listed personal information); *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021) (same).

ProspectNow insists that Byer's situation is distinguishable because—unlike the statutes at issue in *Hoffower*, *Lukis*, and like authorities—the PTFA does not itself mention publicity or codify the common law. [Dkt. 23, at 9.] Rather, its purpose "refers to 'fraudulent and deceptive commercial telephone solicitation' … and its

---

[2] Byer also pleads that such exposure risks "unsolicited contact, harassment, phishing attempts, doxxing, and an overall reduction in personal online privacy." [Dkt. 1, ¶ 23.] He does not, however, allege that the exposure "cause[d] a *separate* concrete harm," or that these future harms are "certainly impending," or at "substantial risk" of occurring. *TransUnion*, 594 U.S. 413, 436; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Either is necessary.

[3] Citations to docket filings generally refer to the electronic pagination supplied by CM/ECF, which may not be consistent with page numbers in the underlying documents.

particularly acute effects on the 'elderly, homebound,' and 'otherwise vulnerable consumers.'" [*Id.*, at 7.] But this argument overstates the inquiry into legislative judgment. Though it's an "easy case" when a statute codifies the common law, *Lukis*, 549 F. Supp. 3d at 805, it's not necessary in every instance. *See Carrera v. Whitepages, Inc.*, 2025 WL 1796574, at *4 (W.D. Wash. June 30, 2025). *TransUnion* is one such example.

In *TransUnion*, third parties received credit reports "that labeled the [plaintiffs] as potential terrorists, drug traffickers, or serious criminals." 594 U.S. at 432. The Supreme Court held that these plaintiffs had standing to sue under the Fair Credit Reporting Act (FCRA), analogizing their injury to the common law tort of defamation. *Id.* But the FCRA did not codify defamation or otherwise concern itself with consumer reputation. According to its statement of purpose, the statute safeguards "the consumer's right to *privacy*," and it promotes accuracy because "[i]naccurate credit reports directly impair the *efficiency of the banking system*." 15 U.S.C.A. § 1681 (emphasis added). It neither invokes nor references defamation or consumer reputation, and the Court never considered whether it did. It merely "afford[ed] due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.* at 425. Here, too, the PTFA unambiguously creates a private right of action when phone numbers are knowingly listed in a commercial directory without consent. C.R.S.A. §§ 6-1-304(4)(a), 305(1)(c). The common law analogue then confirms that this injury in law is also one in fact.

Regardless, it's not even apparent to this court that, as ProspectNow says, Byer is "invent[ing] a new legislative history out of whole cloth." [Dkt. 23, at 9.] Though it's true that, when enacting the PFTA in 1993, the Colorado General Assembly targeted fraudulent solicitations, *see* § 6-1-301, the at-issue provision is part of a specific 2005 amendment that necessarily expands the definition of "unlawful telemarketing practice" beyond solicitations. *Id.* § 6-1-304(4)(a). 'Consent to publish' is the crux of the amendment, so it's hardly spurious for Byer to say that the "*amendment* was aimed at protecting Colorado citizens from the misappropriation of their personal information." [Dkt. 1, ¶ 3 (emphasis added).] The statutory text plainly addresses an "individual's control of information concerning his or her person." *Reps. Comm. For Freedom of Press*, 489 U.S. at 763.

Finally, ProspectNow argues that "a cell phone [number] is not a name or likeness." [Dkt. 23, at 10.] But, as alleged, ProspectNow does not simply publish a string of phone numbers, divorced from their holders' identities and other identifying information. The phone number is part of an individual profile, connected to (and searchable through) Byer's name. [Dkt. 1, ¶¶ 5, 26.] In that way, it is no different than the directories in *Hoffower* and *Lukis*. *See Hoffower*, 736 F. Supp. 3d at 608 (name, job title, company, locations, phone numbers, email addresses, social media

4

pages); *Lukis v. Whitepages Inc.*, 535 F. Supp. 3d 775, 790 (N.D. Ill. 2021) (name, age, city of domicile, and relatives). And it's this aggregated data—name and contact information together—that Byer says generates income for ProspectNow. [Dkt. 1, ¶¶ 20–21 ("collection of personal information about Colorado citizens, *including* cell phone numbers, inherently serves a commercial purpose") (emphasis added).] Identifying information like this constitutes a "textbook example" of likeness. *See Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020); *Green v. Datanyze, LLC*, 2024 WL 168123, at *2 (N.D. Ill. Jan. 16, 2024) (collecting cases).

Byer's situation is distinguishable, though, in a notable respect. In the cited cases, the defendants were said to have used personal information to induce a sale— either by offering a "free preview" to advertise a more comprehensive background report, or by offering full access during a "free trial period to prospective users" who then pay for continued use. *Green*, 2024 WL 168123, at *1 (collecting cases). Byer alleges neither, only that ProspectNow "generate[s] income by selling access to and information about private citizens." [Dkt. 1, ¶ 21.] Yet, in analyzing a statutory publicity claim, the Seventh Circuit has held that a plaintiff's "identity must help sell something—whether it is that product or a separate product or service." *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1102 (7th Cir. 2022). And a "person's identity cannot be employed to sell a product if their identity is only revealed after the sale is completed." *Id.* at 1101.

But this court's inquiry is different. Though the Illinois Right to Publicity Act codified the common law right of publicity, it explicitly requires a "commercial purpose," which involves either a sale, advertising, or fundraising. 765 Ill. Comp. Stat. Ann. 1075/5. The historical tort, however, is broader. *See* Restatement (Second) of Torts § 652C cmt. b (observing that some statutes limit liability to commercial use, but common form of tort includes "use of the plaintiff's name or likeness for [defendant's] own purposes and benefit, even though the use is not a commercial one"). Meanwhile, Byer explicitly alleges a "commercial purpose," (albeit in connection with different statute), *see* dkt. 1, ¶ 20, and whether the allegation holds water is a merits-based question. *See Huston*, 53 F.4th 1097 (affirming on merits). The Seventh Circuit has warned against conflating standing with the merits. *See Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 899–900 (7th Cir. 2012).

And again, the question is *not* whether Byer would prevail in an appropriation lawsuit, but whether there's a "close relationship in kind, not degree" between his injury and the common law tort. *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021) (internal quotation marks and citation omitted). "It is enough to say that the harm alleged in [his] complaint resembles the harm associated with" the tort, *id.*, and here—where Byer alleges that ProspectNow published his name and personal information for profit—it does.

5

Therefore, because Byer's alleged injury relates to the common law right of publicity, he has standing to sue.

### B.     First Amendment

ProspectNow next argues that "the PTFA is facially unconstitutional as a content-based restriction on protected speech." [Dkt. 15, at 7.] In at least some of its applications, however, the law regulates commercial speech. It is therefore facially unconstitutional *only* if it fails intermediate scrutiny—and, even then, *only* if it does so on the pleadings alone. *See Nat'l Experiential, LLC v. City of Chicago*, 2024 WL 3757066, at \*14 (N.D. Ill. Aug. 9, 2024). It doesn't, so the First Amendment defense fails.

### 1.     Commercial Speech

The First Amendment protects the publishing of information. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("creation and dissemination of information are speech within the meaning of the First Amendment"). *See also Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 842, 845 (N.D. Ill. 2008) (collecting cases and observing that "cash register receipt containing a credit card expiration date" is speech). As a preliminary matter, then, the court must determine the limits of that protection, i.e., "the level of scrutiny that applies to the regulation." *United States v. Kokinda*, 497 U.S. 720, 725 (1990). Generally, this determination turns on whether the challenged law is content-based and subject to strict scrutiny, or content-neutral and subject to intermediate scrutiny. *DiMa Corp. v. Town of Hallie*, 185 F.3d 823, 827 (7th Cir. 1999). Here, though, because of the longstanding principle that "commercial speech may be subject to intermediate scrutiny *even if content-based*," the distinction is relevant only if the speech is noncommercial. *See Dawson v. Univ. of Phoenix, Inc.*, 2026 WL 92248, at \*11 & n.9 (N.D. Ill. Jan. 13, 2026) (emphasis added). *See also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983) ("With respect to noncommercial speech, this Court has sustained content-based restrictions only in the most extraordinary circumstances. … By contrast, regulation of commercial speech based on content is less problematic.")

"To determine whether speech falls on the commercial or noncommercial side of the constitutional line, the Court has provided this basic definition: Commercial speech is 'speech that *proposes* a commercial transaction.'" *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014) (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 482 (1989) (emphasis re-added)). But this is just a starting point. *Id.* "Applying the 'core' definition of commercial speech too rigidly ignores" the realities of modern commercial advertising. *Id.* at 518 (observing that an "advertisement is no less 'commercial' because it promotes brand awareness or loyalty rather than explicitly proposing a transaction in a specific product or service"). So, citing *Bolger*'s "guideposts for classifying speech that contains both commercial and noncommercial elements," the Seventh Circuit also considers "'whether: (1) the

speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech.'" *Id.* at 517 (citing *Bolger*, 463 U.S. at 66–67) (though noting that "no one factor is sufficient" and "all are not necessary").

The Ninth Circuit's analysis in *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012), is instructive—as are several decisions from courts in this district, which carve out a fundamental distinction. *See Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016); *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 784 (N.D. Ill. 2021).

In *Dex Media*, the publishers of yellow pages phone directories argued that a Seattle ordinance violated the First Amendment. 696 F.3d at 953. The Ninth Circuit first observed that it was "readily apparent that telephone listings ... contained in the directory constitute noncommercial speech," *id.* at 957, and then concluded that the directories themselves were noncommercial. *Id.* at 965. This was true because they "only satisfy one *Bolger* factor: that the publisher has a commercial motive in publishing the directories." *Id.* at 960. But "under *Bolger* and other Supreme Court precedent, economic motive in itself is insufficient to characterize a publication as commercial," or else any speech published for profit—books, newspapers, magazines—would lose some degree of protection. *Id.* (collecting cases); *accord Nieman v. VersusLaw, Inc.*, 512 F. App'x 635, 638 (7th Cir. 2013). So, too, held the Seventh Circuit in *Nieman*: that the "for-profit nature of the defendants' aggregation websites does not change the analysis." 512 F. App'x at 638. *See also IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) (holding that commercial database's array of biographical information did not propose a commercial transaction and was "encyclopedic, not transactional").

*Vrdolyak* addressed something similar: this time, the publisher of an attorney directory argued its service was "simply a computerized version of the paper 'yellow pages' listings that received full constitutional protection in *Dex Media*." *Vrdolyak*, 206 F. Supp. 3d at 1388. Though the district court noted that "Sponsored Listings"— which advertised specific attorney profiles—were commercial speech, the case itself was about the directory and its information, not the standalone advertisements. *Id.* at 1388–89. Therefore, "[t]he court view[ed] what defendant does as more akin to the yellow pages directory, which receives First Amendment protection." *Id.* at 1388.

Subsequent cases identified a similar dividing line and, in circumstances involving standalone advertisements, held that promotional listings were commercial speech. In *Krause v. RocketReach, LLC*, for example, a "database of emails and direct dials … encourage[d] prospective customers to perform free 'people searches' on its website," which would show both that the "database contain[ed] information about the specific searched-for individual," and that customers could pay "to access additional information not only about the individual featured in the preview, but also

7

about every individual in defendant's database." 561 F. Supp. 3d at 781. This was speech that proposed a commercial transaction. *Id.* at 784. *See also Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 900 (N.D. Cal. 2022); *Camacho v. PeopleConnect, Inc*, 2022 WL 22913841, at \*18 (S.D. Cal. July 18, 2022).

For people-search databases like ProspectNow, then, the contours are clear. Teasers, as distinct from the information in the database itself, are commercial speech. But because they implicate only the third *Bolger* factor, the sold-for-profit information itself receives greater First Amendment protection. *See Lukis*, 542 F. Supp. 3d at 843–44 ("The free previews, if anything, present a more difficult First Amendment case for Defendants than do the background reports because they propose a commercial transaction and thus fall within the core notion of commercial speech."). In a sense, this mirrors the "commercial use" boundaries that the Seventh Circuit established in statutory right of appropriation cases. *See Huston*, 53 F.4th at 1101–02 ("Huston's name and other information may have been sold, but it was not used to sell anything.")

In arguing that section 6-1-304(4)(a)(I) regulates commercial speech, Byer cites a string of 'teaser' and 'free preview' cases that are distinct from his own situation. [Dkt. 20, at 15–20.] Again, his own complaint states only that ProspectNow "generate[s] income by selling access to and information about private citizens"—*not* that it advertises the database via the information itself. [Dkt. 1, ¶ 21.] To the contrary, he specifically identifies a subscription page that describes the product, rather than previewing what a customer might discover therein. [*Id.*, ¶ 20.] The speech, therefore, *is* the product, and ProspectNow argues as much: "[h]ere, the 'data' at issue (a cell phone number) *does not* propose any commercial transaction—*the data is the speech*—and is truthful factual information as opposed to being a solicitation or 'advertisement' to buy some other product or service." [Dkt. 23, at 15–16 (emphasis in original).]

But ProspectNow isn't arguing that the PTFA, as applied to Byer's facts, violates the First Amendment. Rather, it argues that section 6-1-304(4)(a)(I) is facially unconstitutional. [Dkt. 15, at 7 & n.1.] It must therefore "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Byer can prevail if section 6-1-304(4)(a)(I) is constitutional in at least one of its applications.[4] *Id.*

---

[4]     "In the First Amendment context," the Supreme Court "recognizes 'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (citing *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449, n.6 (2008)). *See also Ezell v. City of Chicago*, 651 F.3d 684, 698 n.8 (7th Cir. 2011) (describing overbreadth as a "distinct type of

Naturally, the court turns first to teasers and previews. At first blush, this 'genre' of 'people-search speech' seems to pose clear problems for ProspectNow—at least insofar as it prefers that strict scrutiny apply to this analysis. Courts, of course, agree that teasers satisfy all three *Bolger* factors and implicate "core" commercial speech. In those cases, however, plaintiffs "[did] not challenge [their] inclusion in defendant's database; what [they] object[ed] to is the display of [their] name and personally identifying information in a "preview" intended to solicit subscriptions to defendant's paid service." *Krause*, 561 F. Supp. 3d at 782. *See also Kellman*, 599 F. Supp. 3d at 900 ("teasers—not Spokeo's broader website—are the subject of this suit"); *Camacho*, 2022 WL 22913841, at *18 ("Plaintiffs are not challenging the use of their likeness on the entire Websites themselves, but rather they seek to prevent use of their likeness in conjunction with advertisements for Defendants' services"). *Cf. Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d at 1388 ("this issue depends on whether one views defendant's actions as providing an attorney listing or directory, with advertisements placed on it, or whether one views each attorney profile as an advertisement"). And it's well within this category of plaintiffs' rights to have done do so, since the target of the relevant statutes is misappropriation of an *individual*'s name or likeness.

Section 6-1-304(4)(a)(I) is different: it is not a law about individual names, but rather about "list[ing] … in a directory." *See Dex Media*, 696 F.3d at 957 ("Ordinance regulates a yellow pages phone book as a whole, not simply the individual advertisements contained therein.") Whether it even provides a cause of action for standalone 'teaser' claims is not so clear.

Consider instead, then, a situation where phone numbers are aggregated, but only to facilitate discrete and independent transactions (i.e. beyond purchasing access itself). In *Gabiola v. Sarid*, for example, a database published arrest records alongside "buttons linking to a [paid] removal service." 2017 WL 4264000, at *5–6 (N.D. Ill. Sept. 26, 2017). Because the "profiles [] work together with links directly to the checkout page for the removal service as advertisements," the court was "unpersuaded that the websites at issue are entitled to complete protection of the First Amendment as a matter of law." *Id.* at *6. One can imagine a parallel scenario: a website that compiles phone numbers that permits customers to pay for their

---

facial challenge"). ProspectNow does not specify which type of facial challenge it is pursuing, but it neither mentions overbreadth or its standard, nor does it challenge Byer's framing of its challenge in no-set-of-circumstances terms. [*See* Dkt. 20, at 14.] The court therefore analyzes this *only* as a per-se facial challenge, particularly since an "overbreadth claimant bears the burden of demonstrating, from the text of the law and from actual fact, that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (cleaned up). *See also Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (remanding facial challenge when nobody considered "which of the law's applications are constitutionally permissible and which are not, and [then] weigh[ed] the one against the other").

removal. Or, as might be relevant in the context of telemarketing or lead aggregation, a directory that exists solely to connect buyers and sellers.

Section 6-1-304(4)(a)(I) would seem to provide a cause of action in these circumstances, which, as in *Gabiola*, would implicate commercial speech. Section 6-1-304(4)(a)(I) is therefore unconstitutional in every application only if it cannot survive intermediate scrutiny.

### 2. *Central Hudson*

*Central Hudson* established a four-part 'intermediate scrutiny' framework for cases involving commercial speech. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). "At the outset, [the court] must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading." *Id.* Here, phone numbers are neither related to illegal activity nor "more likely to deceive the public than inform it, so the "government's power [to regulate] is more circumscribed." *Id.* at 563–64. The court therefore asks "whether the asserted governmental interest [motivating the regulation] is substantial." *Id.*, at 566. If so, it must then "determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.* "[T]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002) (internal quotation marks and citation omitted).

"[T]here is an inherent quandary," however, between this burden of proof and the present posture. *Second Amend. Arms v. City of Chicago*, 135 F. Supp. 3d 743, 756 (N.D. Ill. 2015). Here, ProspectNow raises its First Amendment challenge as an affirmative defense, yet Byer "need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). "[B]ecause a motion to dismiss examines only the pleadings," there are limits to what can be resolved "absent at least some discovery." *Second Amend. Arms*, 135 F. Supp. 3d at 756. Even so, "[i]f the face of the complaint shows that it flunks the *Central Hudson* test, there is nothing wrong with dismissal." *Nat'l Experiential*, 2024 WL 3757066, at *14. *See also Hyson USA*, 821 F.3d at 939 ("dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense").

Because "the plain text of a law, its legislative history, and simple common sense" are not matters beyond the pleading, the 'substantial interest' consideration is fertile grounds for analysis at the pleading stage. *Second Amend. Arms*, 135 F. Supp. 3d at 756. Here, the legislative declaration of the PTFA establishes, broadly, that the general assembly was concerned with "fraudulent and deceptive commercial telephone solicitation." Colo. Rev. Stat. § 6-1-301. Byer also identifies privacy as a

relevant government interest. [Dkt. 20, at 12–13.] In response, ProspectNow argues only that Colorado's interest in preventing fraud

> is already addressed by other provisions of the PTFA that directly regulate telemarking fraud, as noted in Defendant's opening brief. Banning publication of cell phone numbers regulates many persons and businesses far beyond fraudulent telemarketers, while adding little to the actual regulation of telephonic consumer fraud.

[Dkt. 23, at 16.[5]] But this argument touches on the last two *Central Hudson* prongs, which assess whether the "limitation on expression [is] designed carefully to achieve the State's goal." *Central Hudson*, 447 U.S. at 564. It says nothing about the interests themselves, which the Supreme Court has held are substantial. *See Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 612 (2021) ("substantial governmental interest in protecting the public from fraud"); *Edenfield v. Fane*, 507 U.S. 761, 769 (1993) ("protection of potential clients' privacy is a substantial state interest. Even solicitation that is neither fraudulent nor deceptive may be pressed with such frequency or vehemence as to intimidate, vex, or harass the recipient"); *F.T.C. v. Trudeau*, 662 F.3d 947, 953 (7th Cir. 2011) ("protection of consumers is a substantial interest").

These final prongs, meanwhile, are not "satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993). ProspectNow argues that Byer "provide[s] *no* evidence that suppressing cell phone numbers reduces consumer fraud by phone and therefore [has] not shown the statute directly advances the interest asserted." [Dkt. 23, at 16–17 (emphasis in original).] This misunderstands not only the pre-evidentiary posture of the challenge, but also the fact that "[c]omplaints need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-*

---

[5]    ProspectNow ignores the interest in privacy altogether, presumably because it isn't stated in the PTFA. Though the "*Central Hudson* standard does not permit [courts] to supplant the precise interests put forward by the State with other suppositions," the Supreme Court has considered those additional interests that "obviously factor[] into" more paramount and professed objectives. *See Fla. Bar*, 515 U.S. at 624. There is a common-sense relationship between privacy and solicitations, both of which can be said to concern the "integrity of the telemarketing industry"—also an explicit target of the PTFA. *See id.* (finding that privacy from direct-mail solicitations "obviously factors into" general integrity of legal profession); Colo. Rev. Stat. § 6-1-301. Regardless, as discussed *supra* Part.III.A, the legislative declaration was written more than a decade before the amendment, which—for the first time—introduces in its plain text a consumer-side concern with consent and control (as opposed to telemarketer behavior). A distinct interest in privacy is plausibly implicit in the text itself. And even ignoring privacy, "a single substantial interest"—here, in preventing fraud—is sufficient to satisfy *Central Hudson*'s first prong." *Fla. Bar*, 515 U.S. at 624 n.1.

*Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (emphasis in original). In short, further factual development is necessary. *See Vugo, Inc. v. City of Chicago*, 273 F. Supp. 3d 910, 917 (N.D. Ill. 2017).

On its face, then, the complaint does not "flunk" *Central Hudson. See Nat'l Experiential*, 2024 WL 3757066, at *14. ProspectNow's motion to dismiss based on the First Amendment is therefore denied.

### C.    Class-Wide Statutory Damages

Finally, ProspectNow argues that, "even if the [c]ourt permits a claim under the PTFA to survive, any demand for class-wide statutory [damages] should be dismissed with prejudice." [Dkt. 15, at 18.] This argument rests on a tension between two damages provisions—one applicable to the Colorado Consumer Protection Act (CCPA), the other to the PTFA (itself situated within the CCPA). Colo. Rev. Stat. §§ 6-1-113(2.9), 305(1).

Section 6-1-113(2.9) establishes that, "[i]n a case certified as a class action, a successful plaintiff may recover actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs." Absent, however, is any mention of statutory damages, which ProspectNow says reflects the general assembly's plain intent to preclude such recovery. [Dkt. 15, at 18.]

Section 6-1-305(1)(c), meanwhile, establishes that,

[a] person who engages in any unlawful telemarketing practice as defined in section 6-1-304(4) shall be liable in a private civil action to the owner of the cellular telephone for consequential damages, court costs, attorney fees, and a penalty in the amount of at least three hundred dollars and not more than five hundred dollars for a first offense and at least five hundred dollars and not more than one thousand dollars for a second or subsequent offense.

This is so "*[i]n addition* to the remedies available under … 6-1-113." *Id.* § 6-1305(1) (emphasis added). Absent here, of course, is any mention of (or limitation to) class-wide damages.

The tension is legitimate but, without more, cannot be resolved in ProspectNow's favor. Under section 6-1-113(2.9), statutory damages are unavailable by omission, not rule.[6] Section 6-1-305(1) is then explicit that PTFA damages are available to plaintiffs *in addition to* routine CCPA remedies—not subject to any unwritten limitations. And it makes statutory damages mandatory *without*

---

[6]    Section 6-1-113(2), which establishes a statutory damages regime in CCPA cases, *does* exclude class actions. But PTFA plaintiffs would pursue such damages through section 6-1-305(1)(c) instead, which is silent as to their availability in class actions.

distinguishing between individual and class action lawsuits, thereby distinguishing itself from CCPA's default approach to statutory damages. *See id.* § 6-1-113(2) (imposing statutory damages on "any person … in a private civil action" "[e]xcept in a class action"). Accordingly, the court cannot agree that statutory damages are necessarily unavailable to class-wide plaintiffs.

## IV. Conclusion

For these reasons, ProspectNow's motion to dismiss is denied in full.

Enter: 25-cv-12217
Date:   July 22, 2026

_____
Lindsay C. Jenkins
United States District Court Judge