HON. TANA LIN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| KELLY HUISKAMP, individually and on behalf of all others similar situated,<br><br>Plaintiff,<br><br>v.<br><br>ZOOMINFO TECHNOLOGIES LLC, a Delaware corporation,<br><br>Defendant. | Case No. 3:25-cv-05443-TL<br><br>**DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS** |



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

Defendant ZoomInfo Technologies LLC submits the following notice of supplemental authority in support of its motion to dismiss plaintiff's amended complaint (Dkt. 31).

On October 27, 2026, the United States Court of Appeals for the Fourth Circuit published its opinion in *Jackson v. Thompson Reuters America Corporation*, Case No. 26-2121 (Doc. 83), affirming the lower court's Rule 12(b)(6) dismissals on the ground that the relevant provision of West Virginia's Daniel's Law, W. Va. Code § 5A-8-24(e), is facially unconstitutional under the First and Fourteenth Amendments. A copy of the decision is attached as Exhibit A.

The Fourth Circuit's findings include the following:

- **Statute Regulating Phone Numbers**. West Virginia's Daniel's Law, "which is designed 'to enhance the safety and security' of judicial and law enforcement officials, prohibits the disclosure by any person or entity of the home addresses or unpublished telephone numbers of judicial and law enforcement officials if a reasonable person would believe that such a disclosure would create a risk of harassment or harm." Op. at 5 (citing W. Va. Code § 5A-8-24(b), (e) (2021)).
- **Speech Includes Data**. "[T]he Supreme Court has clearly held that the scope of 'speech' regulated by the First Amendment … includes data." Op. at 13 (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011)).
- **Tailoring And Least Restrictive Means**. "Section 5A-8-24(e) imposes liability on a data broker immediately upon its disclosure of addresses and telephone numbers, regardless of whether the data broker had knowledge that the information related to Covered Persons. … Because liability is automatic and cannot be effectively avoided, the entity is disincentivized from publishing the information as to *any of the town's residents*. … West Virginia's Daniel's Law *alone* does not require notification as a precondition of liability. Thus, this aspect of the law fails to provide the least restrictive means of furthering the law's compelling interest." Op. at 16-18 (emphases in original).
- ***Bolger* And Economic Motivation**. "While a speaker's economic motivation for speech may be a relevant factor in determining whether speech is commercial … economic motivation



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

alone is insufficient to justify a categorization of that speech as commercial." Op. at 20-21 (citing, *e.g.*, *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 67 (1983)).

Defendant submits that the decision is relevant to the First Amendment arguments raised in defendant's pending motion to dismiss and addressed at the hearing before the Court on that motion held April 21, 2026.

DATED: October 28, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Matthew Hosen*

Matthew Hosen, WSBA #54855
matthosen@quinnemanuel.com
1109 First Avenue, Suite 210
Seattle, Washington 98101
(206) 905-7000

Shon Morgan (*pro hac vice*)
shonmorgan@quinnemanuel.com
John W. Baumann (*pro hac vice*)
jackbauman@quinnemanuel.com
Thomas Nolan (*pro hac vice*)
thomasnolan@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Defendant*
*ZoomInfo Technologies LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 28, 2026, I caused a true and correct copy of the above and foregoing document to be filed on the Court's ECF system, and thereby served on all counsel of record who have appeared in the action.

DATED this 28th day of October, 2026, at Seattle, Washington.

s/ *Matthew Hosen*
Matthew Hosen, WSBA No. 54855



QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101-2961
Telephone: (206) 905-7000 Fax: (206) 905-7100

# EXHIBIT A

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-2121**

---

MICHAEL JACKSON, on behalf of himself and all others similarly situated,

Plaintiff - Appellant,

v.

THOMSON REUTERS AMERICA CORPORATION,

Defendant - Appellee.

------------------------------------------

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION; SOFTWARE & INFORMATION INDUSTRY ASSOCIATION (SIIA); REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND OTHER NEWS AND MEDIA ORGANIZATIONS,

Amici Supporting Appellee.

---

**No. 25-2122**

---

MICHAEL JACKSON, on behalf of himself and all others similarly situated,

Plaintiff - Appellant,

v.

WHITEPAGES, INC.,

Defendant - Appellee.

Case 3:25-cv-05443-TL Document 55 Filed 10/28/26 Page 7 of 28

-----------------------------------------

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION; SOFTWARE & INFORMATION INDUSTRY ASSOCIATION (SIIA); REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND OTHER NEWS AND MEDIA ORGANIZATIONS,

Amici Supporting Appellee.

---

**No. 25-2123**

---

MICHAEL JACKSON, on behalf of himself and all others similarly situated,

Plaintiff - Appellant,

v.

THRYV, INC.,

Defendant - Appellee.

-----------------------------------------

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION; SOFTWARE & INFORMATION INDUSTRY ASSOCIATION (SIIA); REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND OTHER NEWS AND MEDIA ORGANIZATIONS,

Amici Supporting Appellee.

---

**No. 25-2124**

---

MICHAEL JACKSON, on behalf of himself and all others similarly situated,

Plaintiff - Appellant,

v.

PEOPLECONNECT, INC.; INTELIUS LLC; PUBREC, LLC; THE CONTROL GROUP MEDIA COMPANY, LLC; INSTANT CHECKMATE, LLC; TRUTHFINDER, LLC,

Defendants - Appellees.

------------------------------------------

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION; SOFTWARE & INFORMATION INDUSTRY ASSOCIATION (SIIA); REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND OTHER NEWS AND MEDIA ORGANIZATIONS,

Amici Supporting Appellee.

---

**No. 25-2125**

---

MICHAEL JACKSON, on behalf of himself and all others similarly situated,

Plaintiff - Appellant,

v.

LEXISNEXIS RISK SOLUTIONS, INC.,

Defendant - Appellee.

------------------------------------------

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION; SOFTWARE & INFORMATION INDUSTRY ASSOCIATION (SIIA); REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND OTHER NEWS AND MEDIA ORGANIZATIONS,

Amici Supporting Appellee.

---

Appeals from the United States District Court for the Northern District of West Virginia, at Clarksburg. Michael F. Urbanski, Retired District Judge. (1:24-cv-00088-MFU; 1:24-cv-00080-MFU; 1:24-cv-00096-MFU; 1:24-cv-00102-MFU; 1:24-cv-00081-MFU)

---

Argued: September 15, 2026 Decided: October 27, 2026

---

Before NIEMEYER, AGEE, and HARRIS, Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Agee and Judge Harris joined.

---

**ARGUED:** Philip Lawrence Fraietta, BURSOR & FISHER, P.A., White Plains, New York, for Appellant. Samir I. Deger-Sen, LATHAM & WATKINS LLP, New York, New York, for Appellees. **ON BRIEF:** Jason Edward Causey, KATZ, KANTOR, STONESTREET & BUCKNER PLLC, Princeton, West Virginia; Julian Cole Diamond, BURSOR & FISHER, P.A., New York, New York, for Appellant. Robert C. Collins, III, Chicago, Illinois, Nikita Kansra, New York, New York, Jennifer C. Archie, Ruth Hirsch, LATHAM & WATKINS LLP, Washington, D.C.; Patricia M. Bello, LEWIS BRISBOIS BISGAARD & SMITH LLP, Charleston, West Virginia, for Appellees PeopleConnect, Inc.; Intelius LLC; Pubrec, LLC; The Control Group Media Company, LLC; Instant Checkmate, LLC; and Truthfinder, LLC. Michael Berry, Marcel S. Pratt, Philadelphia, Pennsylvania, Anna Kaul, BALLARD SPAHR LLP, Minneapolis, Minnesota; David S. Givens, FLAHERTY, SENSABAUGH & BONASSO PLLC, Wheeling, West Virginia, for Appellee Thomson Reuters America Corporation. Natalie C. Schaefer, Charleston, West Virginia, Michael D. Dunham, SHUMAN, MCCUSKEY & SLICER, PLLC, Winchester, Virginia, for Appellee Whitepages, Inc. Dwight M. Francis, Aimee C. Oleson, Dallas, Texas, Christopher L. Bauer, SHEPPARD MULLIN RICHTER & HAMPTON, LLP, Washington, D.C., for Appellee Thryv, Inc. Bruce M. Jacobs, Charleston, West Virginia, James A. Walls, SPILMAN THOMAS & BATTLE, PLLC, Morgantown, West Virginia, for Appellee LexisNexis Risk Solutions, Inc. Ronald G. London, FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, Washington, D.C., for Amicus Foundation for Individual Rights and Expression. Erik S. Jaffe, Joshua J. Prince, SCHAERR | JAFFE LLP, Washington, D.C., for Amicus Software & Information Industry Association. Mara Gassmann, Lisa Zycherman, Gabriel Rottman, Matthew Singer, THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, Washington, D.C.; Ian Kalish, First Amendment Clinic, UNIVERSITY OF VIRGINIA LAW SCHOOL, Charlottesville, Virginia, for Amici Reporters Committee for Freedom of the Press and Other News and Media Organizations.

---

NIEMEYER, Circuit Judge:

The issue before us in these five appeals is whether a provision of West Virginia's Daniel's Law, W. Va. Code § 5A-8-24(e), is facially unconstitutional under the First and Fourteenth Amendments. That statute, which is designed "to enhance the safety and security" of judicial and law enforcement officials, prohibits the disclosure by any person or entity of the home addresses or unpublished telephone numbers of judicial and law enforcement officials if a reasonable person would believe that such a disclosure would create a risk of harassment or harm. W. Va. Code § 5A-8-24(b), (e) (2021). The law authorizes protected persons to bring a civil action for damages. *Id.* § 5A-8-24(e).

A former law enforcement officer in West Virginia commenced five separate actions to enforce West Virginia's Daniel's Law against five business entities that allegedly disseminated his home address and unpublished telephone number through their "people search" services on the Internet. On the defendants' consolidated motion, the district court dismissed the actions on the ground that the law was facially unconstitutional under the First and Fourteenth Amendments. The court concluded (1) that the law was a content-based restriction on speech; (2) that it was therefore subject to strict scrutiny; and (3) that it was not narrowly tailored to serve the compelling state interest of ensuring the safety of judicial and law enforcement officials. Accordingly, it held that the statute violated the defendants' First Amendment rights and dismissed the actions.

For the reasons given herein, we affirm.

I

The West Virginia legislature enacted its Daniel's Law in 2021, following the tragic 2020 murder in New Jersey of Daniel Anderl, the son of United States District Judge Esther Salas, by a lawyer who was disgruntled by his earlier appearance before Judge Salas. The lawyer, after finding Judge Salas' home address on the Internet, dressed himself as a delivery driver and went to her house, armed with a gun and the intent to kill her. When Daniel Anderl, Judge Salas' 20-year-old son, answered the door with his father standing behind him, the lawyer fatally shot Daniel and seriously wounded his father, Judge Salas' husband. Following the tragedy, Judge Salas publicly lamented, "Unfortunately, for my family, . . . the free flow of information from the Internet allowed this sick and depraved human being to find all our personal information and target us." And she stated further, "[F]ederal judges . . . are forced to live in fear for our lives because personal information, like our home addresses, can be easily obtained by anyone seeking to do us or our families harm."

A year later, West Virginia enacted its Daniel's Law, as did many other States and the U.S. Congress.[*] The West Virginia legislature declared it the public policy of the State "to enhance the safety and security of certain public officials in the justice system . . . , to

[*] *See, e.g.*, Daniel Anderl Judicial Security and Privacy Act of 2022, James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, §§ 5931–5939, 136 Stat. 2395, 3458-69 (2022); Cal. Gov. Code § 7928.215 (2023) (repealed 2026); Del. Code Ann. tit. 10, § 1923 (2022); Haw. Rev. Stat. § 92H-2 (2024); Md. Code Ann., Cts. & Jud. Proc. § 3-2303 (2024); Mo. Rev. Stat. § 476.1304 (2025); N.J. Stat. Ann. § 2C:20-31.1 (2023); Okla. Stat. tit. 20, § 3016 (2023).

foster the ability of these public servants who perform critical roles in the justice system, and to carry out their official duties without fear of personal reprisal from affected individuals related to the performance of their public functions." W. Va. Code § 5A-8-24(b) (2021). The persons covered by the policy ("Covered Persons") are "any active, formerly active, or retired judicial officer, prosecutor, federal or state public defender, federal or state assistant public defender, or law-enforcement officer." *Id.* § 5A-8-24(e); *see also id.* § 5A-8-24(b), (c). Individuals residing at Covered Persons' home addresses are also protected by the law. *Id.* § 5A-8-24(b), (c).

The portion of West Virginia's Daniel's Law that is the subject of this appeal provides:

> Unless written permission is first obtained from the individual, a person, business, or association shall not disclose, redisclose, or otherwise make available the home address or unpublished home or personal telephone number of any [Covered Person] under circumstances in which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property.

W. Va. Code § 5A-8-24(e) (2021). The law defines "disclose" broadly to include any "disseminat[ion]," including over the Internet. *Id.* § 5A-8-24(c)(1). And for violations, it creates a private cause of action, authorizing a court to award a plaintiff actual damages, "but not less than $1,000 for each violation," punitive damages, attorneys fees, as well as "preliminary or equitable relief." *Id.* § 5A-8-24(e)(2).

As distinct from the Daniel's Laws in other States, however, West Virginia's version does not require that the Covered Person, upon discovering an improper disclosure, notify the person or entity that disseminated the information and request that the person or

Case 3:25-cv-05443-TL Document 55 Filed 10/28/26 Page 13 of 28

entity delete the information before liability arises. In addition, for liability to arise under West Virginia's version, the person or entity need not know that they have disclosed a Covered Person's information. The only limiting principle of § 5A-8-24(e) liability is that the information must have been disclosed "under circumstances in which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property." W. Va. Code § 5A-8-24(e) (2021).

## II

Michael Jackson, a retired law-enforcement officer residing in Gassaway, West Virginia, commenced these five separate class actions with similar allegations against each of five companies — Thomson Reuters America Corp.; Whitepages, Inc.; Thryv, Inc.; People Connect, Inc. (which itself included five other related companies); and LexisNexis Risk Solutions, Inc. He alleged that the defendants, without permission, published online, through their "people search" services, his home address and unpublished telephone number, as well as the same information for thousands of other Covered Persons in West Virginia, in violation of West Virginia's Daniel's Law, W. Va. Code § 5A-8-24(e) (2021).

In each complaint, Jackson alleged that the defendant was a "data broker" who collected individuals' personal information and, for a fee, made it available online to customers through its "people search" service. He alleged that the defendant collected the data from public records, social media, and other data brokers. The information that the defendant made available to the public included the home addresses and unpublished telephone numbers of "thousands of active, formerly active, or retired judicial officers,

prosecutors, federal or state public defenders, federal or state assistant public defenders, or law-enforcement officers from West Virginia." (Cleaned up). Jackson also alleged that the defendant disclosed the information "in a way that materially differ[ed] from how government sources of public records function." The defendant provided, as he characterized it, "a highly comprehensive, highly accessible search function that require[d] only two pieces of information about a person of interest: name and state," noting that "[i]f one were to search government sources of public records for these pieces of information (to the extent they are even available), it would take far longer." Jackson alleged that the defendant did not ask permission of any Covered Person before making the information available nor did it exclude from dissemination the information for any person covered by West Virginia's Daniel's Law. Jackson alleged further that in making the home address and unpublished telephone numbers of judicial and law enforcement officials like himself available, the defendant "exposed [him] and his peers to harassment and/or risk of harm to life or property." In support of that claim, he alleged that the risk was recognized by the Federal Trade Commission in its "Data Brokers" report:

> There are a number of potential risks to consumers from data brokers' collection and use of consumer data. . . . [T]hey may facilitate the sending of advertisements . . . which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, . . . people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm.

(Quoting Fed. Trade Comm'n, *Data Brokers: A Call for Transparency and Accountability* 48 (2014)). Based on these allegations, Jackson asserted that each defendant's conduct

violated § 5A-8-24(e), and he sought declaratory and injunctive relief, statutory damages of $1,000 for each violation, as well as attorneys fees.

The defendants filed a consolidated motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss all five complaints, contending that § 5A-8-24(e) was facially unconstitutional under the First and Fourteenth Amendments and unconstitutionally vague under the Fourteenth Amendment.

Following a lengthy hearing, the district court, in a comprehensive 44-page memorandum opinion, granted the defendants' consolidated motion to dismiss, finding that the relevant provision of West Virginia's Daniel's Law was facially unconstitutional under the First and Fourteenth Amendments. Specifically, the court concluded that § 5A-8-24(e) was a content-based restriction on speech, prompting it to apply strict-scrutiny review. While all parties, as well as the court, agreed that the law served a compelling state interest of enhancing the safety and security of judicial and law enforcement officials, the court concluded that the law was not narrowly tailored to serve that interest, as it lacked a notice or knowledge requirement. In light of its ruling, the court did not consider the defendants' vagueness argument.

From the district court's judgments dated August 19, 2025, Jackson filed these appeals, which we consolidated by order dated October 21, 2025.

III

Because the district court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which challenged the legal sufficiency of the complaints,

we review its order granting the motion de novo. *See Blair v. Appomattox Cnty. Sch. Bd.*, 147 F.4th 484, 491 (4th Cir. 2025).

As to facial constitutional challenges of a law, we usually require the party mounting the challenge to demonstrate that the law is "unconstitutional in all of its applications, or that [it] lacks any plainly legitimate sweep." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 100 (4th Cir. 2026) (quoting *Edgar v. Haines*, 2 F.4th 298, 313 (4th Cir. 2021)). But in the First Amendment context, where, as a policy matter, we favor "breathing room for free expression," we relax our review and determine only whether "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (cleaned up); *see also Nat'l Ass'n of Diversity Officers*, 167 F.4th at 100. As a consequence, a party bringing a First Amendment facial challenge need only demonstrate "a substantial risk that application . . . will lead to the suppression of speech." *Nat'l Ass'n of Diversity Officers*, 167 F.4th at 100 (cleaned up).

IV

In striking down as unconstitutional § 5A-8-24(e) of West Virginia's Daniel's Law, the district court concluded that the law regulated speech based on its content and that it served a compelling government interest in protecting the safety of government officials, but it also concluded that the law was not narrowly tailored to serve that compelling government interest.

The principles that the district court applied are well established. The First Amendment prohibits Congress from making any law that "abridg[es] the freedom of speech," U.S. Const. amend. I, and the Fourteenth Amendment extends that prohibition to the States, *see Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019). Thus, it is a "most basic rule" that laws restricting speech based on the speech's content are "presumptively unconstitutional" and must, to remain viable, withstand strict scrutiny. *Moshoures v. City of N. Myrtle Beach*, 131 F.4th 158, 167 (4th Cir. 2025) (cleaned up). To withstand strict scrutiny, the party defending the law must demonstrate that it is narrowly tailored to serve a compelling government interest. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). And to be narrowly tailored, the law must use the "least restrictive means" of furthering that compelling government interest. *See McCullen v. Coakley*, 573 U.S. 464, 478 (2014).

Jackson contends that the district court erred in applying several of these principles when analyzing West Virginia's Daniel's Law. He argues (1) that the law regulates data, not "speech," and therefore it is not protected by the First Amendment; (2) that, in any event, the law does not regulate on the basis of content and therefore it need not survive strict scrutiny; (3) that, accepting the district court's conclusions on speech and content, the law is, in any event, narrowly tailored to serve a compelling government interest in enhancing the safety and security of judicial and law enforcement officials; and (4) that, aside from his other arguments, the law falls under several purported exceptions to the application of strict scrutiny because it is a law punishing news organizations for the publication of truthful information in sensitive cases; it is a law protecting confidentiality,

which, he argues, is traditionally exempted from the standard First Amendment analysis; and it is commercial speech, which is subject to only intermediate scrutiny. We address these arguments seriatim.

A

Jackson contends first that West Virginia's Daniel's Law only regulates data, not speech. He reasons that speech must be communicative such that it "convey a particularized message" with "the likelihood . . . that the message would be understood by those who" received it. (Quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). Since Daniel's Law regulates disclosures of "pure facts" that lack a particularized message, he argues, the law is not subject to any First Amendment analysis. (Cleaned up).

While Jackson's argument has some intuitive appeal, the Supreme Court has clearly held that the scope of "speech" regulated by the First Amendment is broader and includes data, reasoning that facts are "the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 271–72 (4th Cir. 2010) (concluding that, in the circumstances presented, the publication of unredacted social security numbers was speech protected by the First Amendment). Indeed, the Court has noted more specifically that statutes like West Virginia's Daniel's Law, which address only the disclosure of information, involve the regulation of speech protected by the First Amendment, observing, "If the acts of 'disclosing' and 'publishing'

information do not constitute speech, it is hard to imagine what does fall within that category . . . ." *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (cleaned up).

In view of these clear holdings from the Supreme Court, we must reject Jackson's contention that West Virginia's Daniel's Law does not regulate speech subject to the protections of the First Amendment.

B

Jackson next contends that the district court erred in concluding that West Virginia's Daniel's Law regulates speech *based on its content* so as to be subject to strict scrutiny. He argues that the law does not regulate speech based on its "communicative content," *i.e.*, the "topic discussed or the idea or message expressed." (Quoting *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022)). He argues that, rather than discussing or expressing an idea or message, the home addresses and telephone numbers are only "specific bits of data that create a very real threat for public servants and their families." Accordingly, he maintains that the law should not be subject to strict scrutiny.

Jackson is correct in noting that a speech restriction is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. But a restriction is also content-based if, "on its face," it makes distinctions based on the content of speech. *Id.* And we conclude that West Virginia's Daniel's Law does indeed, on its face, distinguish between different disclosures based on communicative content alone. It restricts disclosure of certain kinds of information (home addresses and unlisted telephone numbers), and it does so for certain individuals (judicial

Case 3:25-cv-05443-TL Document 55 Filed 10/28/26 Page 20 of 28

and law enforcement officers and their families). Disclosures of such information for individuals who do not qualify as Covered Persons thus are not prohibited by the law. This means, for example, that a disclosure that a grocery store clerk lives at 100 Main Street is permitted, while a disclosure that a police officer lives at 100 Main Street is prohibited. The only difference between the two disclosures is the communicative content, or what the disclosures *mean*. In the hypothetical, the latter disclosure is prohibited *because* it identifies 100 Main Street as being the home address of the police officer, while the earlier disclosure is permitted *because* it identifies 100 Main Street as belonging to the grocery store clerk. West Virginia's Daniel's Law thus targets certain disclosures because of their communicative content, leading us to conclude that it regulates on the basis of content. In that circumstance, strict scrutiny applies.

C

Jackson next contends that even if West Virginia's Daniel's Law regulates speech based on its content, the law nonetheless survives because it is narrowly tailored to serve the compelling government interest of enhancing the safety and security of judicial and law enforcement officials and, therefore, satisfies strict scrutiny.

While the parties agree, as do we, that the law's purpose of enhancing the safety of judicial and law enforcement officials is a compelling government interest, they disagree on whether the law is narrowly tailored to serve that purpose. And it is the district court's conclusion that the law was *not* narrowly tailored that Jackson challenges.

Case 3:25-cv-05443-TL Document 55 Filed 10/28/26 Page 21 of 28

To be narrowly tailored, a challenged law must be "the least restrictive means" of furthering the compelling government interest that the law purports to serve. *McCullen*, 573 U.S. at 478. And in this case, we agree with the district court that West Virginia's Daniel's Law does not employ the least restrictive means of serving the law's purpose.

Section 5A-8-24(e) imposes liability on a data broker immediately upon its disclosure of addresses and telephone numbers, regardless of whether the data broker had knowledge that the information related to Covered Persons. Whenever an entity such as a data broker collects names and addresses of all persons in a particular town using public land records and then publishes that information in some form of a directory, it undoubtedly violates the law because that directory includes, albeit unknowingly, information about, for instance, a police officer or public defender. Because liability is automatic and cannot be effectively avoided, the entity is disincentivized from publishing the information as to *any of the town's residents*. When a restriction on speech creates liability without a knowledge requirement, speakers are understandably incentivized to engage in self-censorship to avoid inadvertently incurring liability. *See Counterman v. Colorado*, 600 U.S. 66, 75 (2023) (noting that "prohibitions on speech have the potential to chill, or deter, speech outside their boundaries"). In effect, West Virginia's Daniel's Law does not limit liability to even discrete inadvertent disclosures of prohibited information; liability follows automatically simply because such information relating to a broad group of people unknowingly includes information about judicial and law-enforcement officials. As a result, data brokers either face liability or they self-censor and do not publish such information.

Jackson argues, however, that the law is much more limited because it imposes liability only if "a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property." W. Va. Code § 5A-8-24(e) (2021). That provision, however, is hardly limiting, as Jackson agreed at oral argument, because every disclosure of a person's name and address on the Internet exposes that person to harassment or a risk of harm. Indeed, Jackson could not articulate *any* situation where *any* disclosure did not "expose" a Covered Person to harassment or risk of harm. And in his complaints, he recognized this. He alleged that the mere disclosure of home addresses and unpublished telephone numbers "exposed [him] and his peers to harassment and/or risk of harm to life or property." And to support that unremarkable proposition, he quoted the FTC's report on "Data Brokers," which highlights the "potential risks to consumers from data brokers' collection and use of consumer data," including the fact that "people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm." (Quoting Fed. Trade Comm'n, *supra*, at 48). Indeed, Jackson added that the FTC's report explains why the defendants' disclosures are "so dangerous." Thus, the argued "limitation" in § 5A-8-24(e) is actually not limiting but universal, as it is inevitable that *every* disclosure of personal information on the Internet poses an additional risk of harassment or harm to the person whose information is disclosed.

Additionally, States other than West Virginia that have enacted Daniel's Laws have uniformly required that, before liability attaches to a disclosure of home addresses and

unpublished telephone numbers, Covered Persons give notice of their request that the data broker (or any other disclosing party) remove the information. Only on the failure to comply does liability attach. *See, e.g.*, Del. Code Ann. tit. 10, § 1923(b) (providing that "[a]fter a [disclosing party] has received a written request from a [Covered Person] to protect the personal information of the [Covered Person] or their family, that [disclosing party] must remove the personal information from public display within 72 hours"). But West Virginia's Daniel's Law *alone* does not require notification as a precondition of liability. Thus, this aspect of the law fails to provide the least restrictive means of furthering the law's compelling interest.

While we hasten to note that requiring notice prior to imposing liability is one method for narrowing the law, it is not the only way. But it is the way that Congress and virtually every other State has chosen to narrow their laws and render them less speech-restrictive.

At bottom, we agree with the district court's conclusion:

> [D]ue to its lack of a notice requirement, [§ 5A-8-24(e)] of West Virginia's Daniel's Law is far more restrictive then its comparators [in other States] and is definitively not the least restrictive means of achieving its compelling interest. Section [5A-8-24(e)] of West Virginia's Daniel's Law therefore fails strict scrutiny even as other more narrowly tailored federal and state statutes aiming at the same compelling interest pass constitutional muster.

D

Finally, Jackson makes several distinct arguments that West Virginia's Daniel's Law falls within a purported exception to the application of strict scrutiny.

*First*, he argues that we should apply the principles laid out in a line of Supreme Court cases evaluating statutes punishing news organizations for the publication of truthful information in sensitive cases. *See The Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102–03 (1979) (collecting cases); *see also Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322 (D.N.J. 2024), *appeal docketed*, No. 25-1587 (3d Cir. Mar. 31, 2025) (evaluating New Jersey's Daniel's Law under *Florida Star*). We are not convinced, however, that the issue before us is sufficiently analogous to the issues presented in *Florida Star* and *Smith*. In both cases, the Court was presented with a situation where the State attempted to punish a news organization for publishing truthful information that was lawfully obtained. *See Florida Star*, 491 U.S. at 530 (characterizing this line of cases as reconciling "the conflict between truthful *reporting* and state protected privacy interests" (emphasis added)); *Smith*, 443 U.S. at 101–03. The statute before us is broader, granting private rights of action against a much larger group than just the press, which hold explicit constitutional protection. Moreover, the Supreme Court was careful to circumscribe the applicability of those cases. *See Florida Star*, 491 U.S. at 541 ("Our holding today is limited"); *Smith*, 443 U.S. at 105 ("Our holding in this case is narrow"). But even were we to apply *Florida Star* and *Smith*, the applicable standard would be strict scrutiny. *See Soderberg v. Carrion*, 999 F.3d 962, 964, 969 (4th Cir. 2021). Thus, regardless of whether *Florida Star* and *Smith* apply, we would still conduct the same analysis.

*Second*, Jackson argues that we should recognize the history and tradition of statutes like Daniel's Law, which he characterizes broadly as "statutory protections for

confidentiality," contending that these kinds of statutes have been allowed to stand outside traditional First Amendment protections. Jackson, however, has not presented evidence that laws like Daniel's Law fall within this class of cases or explained how these types of laws could have coexisted with the longstanding practice of publishing home addresses and telephone numbers. While, as he points out, some privacy statutes with long histories have been upheld under less stringent First Amendment scrutiny, he fails to explain how the more analogous types of disclosures, such as Whitepages and Yellow Pages, have a long history of having been regulated by laws like a Daniel's Law. Furthermore, even considering the broader category of privacy statutes he asks us to analyze, Jackson still has difficulty establishing that they have historically evaded stringent First Amendment analysis. *See, e.g.*, *Am. Ass'n of Pol. Consultants v. FCC*, 923 F.3d 159, 168 (4th Cir. 2019) (applying strict scrutiny to a statute furthering an interest of "protecting personal and residential privacy"), *aff'd sub nom. Barr v. Am. Ass'n of Pol. Consultants*, 591 U.S. 610 (2020).

*Third*, Jackson argues that West Virginia's Daniel's Law should be evaluated as commercial speech, which is subject to intermediate scrutiny. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563–64 (1980). He contends that the defendants' disclosures were driven by an economic motivation, meaning "*many* data 'disclosures' regulated by Daniel's Law qualify as commercial speech" (emphasis added), and, as such, the intermediate-scrutiny standard for commercial speech should apply. We cannot agree, however. While a speaker's economic motivation for speech may be a relevant factor in determining whether speech is commercial, *see Greater Balt. Ctr. for*

Case 3:25-cv-05443-TL Document 55 Filed 10/28/26 Page 26 of 28

*Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 879 F.3d 101, 108 (4th Cir. 2018), economic motivation alone is insufficient to justify a categorization of that speech as commercial, *see Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 67 (1983). Furthermore, because, even under Jackson's argument, only *some* of the regulated speech would be commercial, that fact does not render the law subject to the intermediate scrutiny of commercial speech. When a statute "applies with equal force to both commercial and noncommercial messages" with "no exception for noncommercial speech," the fact that some of the regulated speech is commercial does not justify an application of intermediate scrutiny. *City of Austin,* 596 U.S. at 68 n.3.

In sum, we conclude that these arguments are not sufficient to justify bypassing strict scrutiny, which we conclude applies to our analysis of West Virginia's Daniel's Law.

## V

For generations now, home addresses and telephone numbers have been disseminated to the public, initially through Whitepages and Yellow Pages and now through "people search" services on the Internet. The public has thus long had the facility to look up the name of a person and obtain that person's address and telephone number. Sharing that information has been the gateway to communication and the exchange of ideas or messages that have long been protected by the First Amendment. In the digital age, such information may now be shared with greater efficiency, but the tradition continues with the understanding that it is protected speech.

In a similar vein, it has long been custom and practice to record for public examination the names and addresses of persons buying, selling, and financing real property. And it has been the tradition to share publicly information about taxes, appraisals, liens, and voting.

To be sure, while the dissemination of such information is protected speech necessary to the exchange of ideas, it can also contribute to abuse and the pursuit of harmful and, indeed, malicious ends, as exemplified by the murder of Daniel Anderl. To address such abuse, governments have enacted laws like Daniel's Law in an effort to restrict the dissemination of home addresses and unpublished telephone numbers of specified public officials who serve in roles important to society. And the parties here agree that those governments have a compelling interest in enhancing the safety and security of such officials. The task, therefore, is to draw an appropriate line between protecting the dissemination of such information while, at the same time, excepting from dissemination the same information when it creates a potential for harm of specified public officials.

Because of the high value that our Constitution and longstanding practices place on the free dissemination of information and the exercise of free speech, we draw the line with the greatest caution, requiring that governments regulate speech about the home addresses and telephone numbers of designated public officials in a manner that is the *least restrictive* of speech.

In this case, West Virginia was fully justified in attempting to regulate such speech in light of the compelling government interest in enhancing the safety and security of certain public officials, but its efforts reached more broadly then necessary to accomplish

the task; it did not employ the least restrictive means of doing so. For that reason and only that reason, we agree with the district court that West Virginia could have regulated more narrowly to accomplish its purpose and thereby be less restrictive of what is otherwise protected speech. Thus, we agree that the provision of West Virginia's Daniel's Law at issue here, W. Va. Code § 5A-8-24(e), violates the First and Fourteenth Amendments.

The judgments of the district court are, accordingly,

AFFIRMED.